# United States Court of Appeals
## For the First Circuit

No. 14-1648

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL ÁNGEL VÁZQUEZ-MARTÍNEZ,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]


Before

Torruella, Kayatta, and Barron,
Circuit Judges.


Gail S. Strassfeld, on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States
Attorney, on brief for appellee.


January 27, 2016

**TORRUELLA**, **Circuit Judge**.    Defendant Miguel Ángel Vázquez-Martínez ("Vázquez")[1] pleaded guilty to one count of illegal possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).  Vázquez now appeals his sentence of 60 months' imprisonment on the grounds that it was procedurally and substantively unreasonable.  For the reasons discussed below, we affirm.

## I.  Facts

"Because this appeal follows a guilty plea, we derive the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report, and the sentencing hearing transcript."  United States v. Zapata-Vázquez, 778 F.3d 21, 22 (1st Cir. 2015).

In the late hours of August 14, 2013, and the early hours of August 15, 2013, the police were conducting a public safety sweep of a housing project in San Juan.  The police had information that Vázquez lived in one of the units in the housing project and that he was a drug trafficker.  The police knocked on the door of the apartment they believed was Vázquez's.  Vázquez's partner answered and consented to a search of the apartment.  After signing a consent form, Vázquez's partner told the police that her

---

[1]  In Vázquez's brief, he spells his name "Vásquez."  We employ here the spelling used in the record materials.

"husband" was in one of the apartment's bedrooms. The police approached the bedroom and spoke with Vázquez, who, in addition to consenting to the search, told the officers any illegal items in the apartment were his. Vázquez then disclosed that he had hidden a pistol under a pillow and a rifle inside a dresser drawer.

True to Vázquez's word, the police found a pistol and an AK-47 assault rifle during their search. Because the AK-47 had been modified from its original design to shoot more than one shot upon a single pull of the trigger without manual reloading, it qualified as a "machinegun" under 18 U.S.C. § 922(o). The police arrested Vázquez and he subsequently pled guilty to one count of unlawful possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).

Pursuant to 18 U.S.C. § 924(a)(2), Vázquez faced a statutory maximum of 10 years' imprisonment. But as part of the plea agreement, the parties stipulated that Vázquez's adjusted offense level was 15,[2] which, if Vázquez's Criminal History Category ("CHC") was I, corresponded with a U.S. Sentencing Guidelines range of 18-24 months' imprisonment. The plea agreement, however, did not stipulate a CHC. Instead, the parties

---

[2] The parties calculated Vázquez's base offense level as 18 under U.S.S.G. § 2K2.1(a)(5). This base offense level was reduced by three levels pursuant to U.S.S.G. § 3E1.1 because Vázquez accepted responsibility.

agreed that if the district court determined Vázquez's CHC was I or II, Vázquez would recommend a sentence of 18 months' imprisonment while the Government would recommend 24 months' imprisonment. If Vázquez's CHC was III or higher, the parties agreed they would both recommend that the court sentence Vázquez to the lower end of the applicable Guidelines range.

Prior to the sentencing hearing, a probation officer prepared a presentence report ("PSR") calculating Vázquez's adjusted offense level as 17.[3] The PSR explained that Vázquez should be subject to a higher offense level than had been described in the plea agreement because he was a prohibited person at the time of the offense -- Vázquez had admitted to the probation officer he consumed Percocet and marijuana around ten times per day since he was seventeen.

The PSR calculated Vázquez's criminal history score as two, which corresponded with a CHC of II. When Vázquez was seventeen years old, he was convicted of four weapons law violations and sentenced to 27 months' probation. Vázquez's probation, however, was revoked and he served 20 months in a juvenile facility until March 2012. The PSR also noted that

---

[3] The PSR calculated Vázquez's base offense level as 20 due to his prohibited person status. Like the plea agreement, the PSR then included a three-level downward adjustment for acceptance of responsibility.

Vázquez had been arrested as an adult in 2010 for first-degree murder and weapons violations, although these charges were dismissed.

Based on an adjusted offense level of 17 and CHC of II, the PSR calculated Vázquez's Guidelines range as 27-33 months' imprisonment. The PSR also stated that the district court could "reasonably consider a variance . . . by taking into account the need to promote respect for the law, and [to] protect the public from further crimes" committed by Vázquez.

At the sentencing hearing, Vázquez objected to the PSR's adjusted offense level and argued other judges in the same district had honored stipulated offense levels that did not account for the defendant's admitted drug use. In addition to citing other weapons offense cases in the district, Vázquez argued he should be sentenced to 18 months, or at least to the low end of the Guidelines range, due to his difficult upbringing -- Vázquez's father and brother were both murdered due to their involvement with drugs. Per the plea agreement, the Government asked for a 24-month sentence.

The district court adopted the PSR's calculations and acknowledged that Vázquez faced a Guidelines range of 27-33 months' imprisonment. The district court went on to recount Vázquez's educational and employment history, admitted drug use, and

-5-

criminal history. Before announcing its sentence, the district

court stated:

> The Court has taken into consideration the elements of the offense. Mr. [Vázquez] was in possession of two firearms -- one, a Glock .22 pistol . . . ; and one AK-47 rifle which was modified to fire in a fully automatic capacity along with a drum-type high-capacity magazine.
>
> Moreover, the aforementioned firearms were located at the defendant's address of record that he shared with his consensual partner and three minor children.
>
> The Court has taken into consideration all of the factors in 18 U.S. Code, Section 3553, the elements of the offense, the plea agreement between the parties, the need to promote respect for the law and to protect the public from further crimes by this defendant.
>
> This was addressed in the issues of deterrence and punishment. This Court deems that a sentence outside of the guideline range is needed to satisfy the statutory sentencing factors and to protect the community from further crimes of this defendant.

The district court then sentenced Vázquez to 60 months'

imprisonment. Vázquez objected to the sentence's substantive (but

not procedural) reasonableness. This appeal followed.

## II. Discussion

When reviewing a district court's sentence, an appellate

court must first "ensure that the district court committed no

significant procedural error." Gall v. United States, 552 U.S.

38, 51 (2007). "Assuming that the district court's sentencing

decision is procedurally sound, the appellate court should then

-6-

consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. On appeal, Vázquez argues that his sentence was both procedurally and substantively unreasonable.[4] We address each of these claims below.

## A. Procedural Reasonableness

A district court's sentencing discretion is cabined by a sequence of procedural steps it must follow. See United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall, 552 U.S. at 49. "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Id. A district court must then consider the parties' arguments and the sentencing factors described in 18 U.S.C. § 3553(a). Martin, 520 F.3d at 91.

At the final stage, the district court explicates its sentencing decision on the record. Id. "In the last analysis, a sentencing court should not consider itself constrained by the

---

[4] As a threshold matter, Vázquez argues that his plea agreement's appeal waiver does not apply. The Government does not contest this issue. We agree that we may review Vázquez's sentence because the district court's sentence was outside the plea agreement's terms. United States v. McCoy, 508 F.3d 74, 77-78 (1st Cir. 2007).

guidelines to the extent that there are sound, case-specific reasons for deviating from them." Id.

If the district court imposes a sentence outside the Guidelines range, 18 U.S.C. § 3553(c)(2) creates two additional requirements. The district court must state "the specific reason for the imposition of [the] sentence" (1) in open court and (2) "in a statement of reasons form issued under section 994(w)(1)(B) of title 28." Vázquez argues that the district court violated both of § 3553(c)(2)'s requirements. First, Vázquez claims that the district court failed to sufficiently justify its above-Guidelines sentence in open court. Second, Vázquez points out that the district court failed to provide a written statement of reasons form and argues that this error requires this Court to vacate his sentence. We consider each of these arguments in turn and reject both.

**1. Adequacy of Oral Explanation**

Vázquez concedes that he did not object to the adequacy of the district court's oral explanation and therefore our review should be for plain error. Under the plain error standard, a defendant must show that (1) "an error occurred," (2) which was "clear or obvious," (3) "that affected his substantial rights," and (4) "seriously impaired the fairness, integrity, or public

reputation of judicial proceedings." <u>United States</u> v. <u>Millán-Isaac</u>, 749 F.3d 57, 66 (1st Cir. 2014).

It is not clear or obvious that the district court's explanation for its above-Guidelines sentence was inadequate. Vázquez characterizes the district court's explanation as consisting "sole[ly]" of its statement that a longer sentence was "needed to satisfy the statutory sentencing factors and to protect the community from further crimes" committed by Vázquez. Vázquez acknowledges that the district court recounted his personal history and characteristics, his prior criminal history, and the nature of his offense at the sentencing hearing, but argues that the district court failed to "link" this information to Vázquez's sentence. Although an explicit link is preferred, this Court may infer a district court's reasoning. <u>See</u> <u>United States</u> v. <u>Jiménez-Beltre</u>, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), <u>abrogated on other grounds by</u> <u>Rita</u> v. <u>United States</u>, 551 U.S. 338 (2007) ("[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did."); <u>see also</u> <u>United States</u> v. <u>Paulino-Guzmán</u>, No. 14-1859, a ___ F.3d ___, 2015 WL 8284615, at *2 (1st Cir. Dec. 9, 2015) (rejecting defendant's argument that district court based upward variance solely on community considerations when court provided "run-down of [the defendant's] criminal history"

and "concluded its discussion of the sentencing factors with a reference to [the defendant's] age, education, work history, and history of drug use"). Moreover, the district court followed the proper procedural framework of calculating Vázquez's Guidelines range as a "starting point," Gall, 552 U.S. at 49, before turning to the sentencing factors and the specifics of Vázquez's case, Martin, 520 F.3d at 91. This Court can infer that by following this sequential process, the district court based its departure on all of the factors listed prior to the announcement of its sentence.[5]

Vázquez also portrays the district court's variance as mathematically large and as thus requiring a proportionally more detailed explanation. We have recognized that "a certain 'sliding scale' effect" applies to sentencing so that "a major deviation . . . must 'be supported by a more significant justification than a minor one.'" Martin, 520 F.3d at 91 (quoting Gall, 522 U.S. at 50). Nonetheless, we have refused to apply a "stringent

---

[5] Vázquez also contends that the district court failed to consider the mitigating circumstances he presented, but all of the relevant information was included in the PSR, which the district court reviewed and considered in selecting a sentence. Under such circumstances, "[t]he district court is not obligated to articulate all the factors it took into consideration at sentencing," provided that its sentencing rationale is adequate. United States v. Torres-Nevárez, No. 13-2396, 2015 WL 5306394, at *2-3 (1st Cir. Sept. 11, 2015).

mathematical formula" to a district court's sentencing decision. Id. at 91.

It is also true that "[w]hen a factor is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." United States v. Zapete-García, 447 F.3d 57, 60 (1st Cir. 2006). Thus, Vázquez's criminal history and drug addiction could not have been the only reasons for the district court's departure when his Guidelines range incorporated both.

We admit that the district court's variance was not insubstantial and its discussion was not as robust as it could be. Nonetheless, we conclude that it was neither clear nor obvious that the district court's proffered explanation was inadequate. In addition to following the correct procedural framework, the district court did not base its departure entirely on factors already included in the Guidelines calculations. Along with Vázquez's criminal history and drug addiction, the district court also considered his subsequent probation revocation, his prior adult arrest, and the circumstances surrounding his current offense as well as the need to "promote respect for the law and to

-11-

protect the public from further crimes" committed by Vázquez and address the sentencing factors of "deterrence and punishment."

Although the district court could have made its rationale more explicit, we can reasonably infer that the district court's discussion of deterrence, punishment, and respect for the law reflected a concern that a Guidelines-range sentence did not adequately take into account Vázquez's potential for recidivism. Based on less than one-and-a-half years elapsing between Vázquez's release for prior weapons convictions and the August 2013 arrest, the district court could conclude that Vázquez did not take his previous conviction seriously and an above-Guidelines sentence was needed to promote respect for the law. For similar reasons, the district court could also conclude that because Vázquez's previous conviction did not deter his illegal conduct an above-Guidelines sentence was necessary to prevent future crimes.

In addition to these recidivism-based concerns, the district court also took into consideration the circumstances surrounding Vázquez's offense that made it more serious. These circumstances include the fact that Vázquez kept his machinegun (and another legal firearm) in a residence he shared with three minor children. Given all of these factors and the overall procedural soundness of the sentencing hearing, we reject

Vázquez's plain error challenge to the sufficiency of the district court's oral explanation.

**2. Written Statement of Reasons**

Vázquez next challenges the district court's failure to provide the written statement of reasons form described in 18 U.S.C. § 3553(c)(2) and 28 U.S.C. § 994(w)(1)(B). Vázquez argues we should use the more favorable abuse-of-discretion standard (rather than plain error) because he would not have become aware of the error until after the sentencing hearing, thereby limiting his avenues of objection to appeal. Resolving this issue, however, is unnecessary because we find that Vázquez's claim fails under our most lenient standard of review for sentencing.

Even with preserved sentencing errors,[6] remand is necessary "only if the sentence was imposed as a result" of the error. United States v. Tavares, 705 F.3d 4, 25 (1st Cir. 2013) (quoting Williams v. United States, 503 U.S. 193, 203 (1992)). "If 'the district court would have imposed the same sentence' even

_____

[6] We have previously stated that a district court's failure to provide a written statement of reasons is "inadequate as a matter of law," Millán-Isaac, 749 F.3d at 69, and the Government does not dispute that an error occurred in this case.

without the error, it was harmless." Id. (quoting Williams, 503 U.S. at 202).

Given our review of the district court's oral explanation, we believe that the district court would have imposed the same sentence had it filed a written statement of reasons form. The district court's oral explanation provided this Court with an adequate record to evaluate the appropriateness of its departure. This outcome is in line with our previous decision in United States v. Tavares, where we held that a district court satisfied § 3553(c)(2)'s writing requirement by simply incorporating the sentencing hearing transcript by reference. 705 F.3d at 31-32. The district court's failure to include a written statement of reasons form does not belie any misunderstanding of the Sentencing Guidelines or the facts of Vázquez's case that would cause us to believe the district court's error affected Vázquez's sentence. We thus conclude that remand is unnecessary.

Additionally, our review of the statutory scheme suggests the written statement of reasons form serves a largely administrative purpose, supporting our view that Vázquez was not harmed by its absence. As described in 28 U.S.C. § 994(w)(1)(B), the content of the written statement of reasons form is determined by the Judicial Conference and Sentencing Commission. The form is just one component of a report district courts must provide to

the Sentencing Commission, which the Sentencing Commission aggregates and analyzes to give recommendations to Congress annually.  Id. § 994(w)(1), (3).  This framework, giving the Sentencing Commission control over the content of the form as part of its reporting duties to Congress, suggests the form primarily facilitates data collection.  Bolstering this view is the fact that under § 3553(c)(2), the written statement of reasons form is separate from the judgment.[7]  This decoupling of the form from the judgment leads us to question whether the form serves a substantive

---

[7]  This was not always the case.  The Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 401(c), 117 Stat. 650, 669-70, amended § 3533(c)(2) to require district courts to provide an explanation for variant sentences in the written judgment. Failure to do so triggered de novo review of the variant sentence by the courts of appeals.  Id. § 401(d)(1)-(2), 117 Stat. at 670 (codified in 18 U.S.C. § 3742(e)).  The conference report for the PROTECT Act stated these sentencing reforms were intended to curb the number of below-Guidelines sentences district courts awarded. H.R. Rep. 108-66, at 58-59 (2003) (Conf. Rep.), as reprinted in 2003 U.S.C.C.A.N. 683, 693-94.  The PROTECT Act also created the reporting requirements in 28 U.S.C. § 994(w)(1).  PROTECT Act, § 401(h), 117 Stat. at 672.

The Supreme Court, however, invalidated the code provisions requiring de novo review for variant sentences, including those that lacked written explanations in their judgments.  United States v. Booker, 543 U.S. 220, 260 (2005).  Only after the Supreme Court's decision did Congress amend § 3553(c)(2) to its current language.  Federal Judiciary Administrative Improvements Act of 2010, Pub. L. No. 111-174, § 4, 124 Stat. 1216, 1216.  This decoupling of the statement of reasons from the judgment may also suggest that the form's purpose is to facilitate data collection rather than appellate review.

-15-

purpose. Although we have discussed the written statement of reasons form as part of procedural reasonableness, we express some reservations about whether the form is one of the procedural steps a district court must take to explain its sentence. Nonetheless, we decline to decide whether the written statement of reasons is purely administrative given the lack of briefing. The facts of Vázquez's case demonstrate he was not harmed by the statement of reasons form's absence so he is not entitled to remand.

## B. Substantive Reasonableness

Concluding that the district court provided us with an adequate record to review, we now turn to the substantive reasonableness of Vázquez's sentence. Vázquez argues that his sentence was substantively unreasonable because it was "nearly double" the maximum Guidelines-range sentence. Vázquez preserved this claim by objecting at the end of his sentencing hearing, so we review for abuse of discretion. United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014).

The abuse of discretion standard acknowledges that "there is not a single reasonable sentence but, rather, a range of reasonable sentences." Martin, 520 F.3d at 92. Thus, "reversal will result if -- and only if -- the sentencing court's ultimate determination falls outside the expansive boundaries of that universe." Id. When a district court's sentence is outside the

-16-

Guidelines range, "the highly deferential abuse-of-discretion standard remains in full force." United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014). "Although an appellate court must take into account the full extent of any variance, the dispositive question remains whether the sentence is reasonable in light of the totality of the circumstances." Id.

We conclude that Vázquez's 60-month sentence was within the range of reasonable sentences the district court could impose. "A sentencing court's reasons for a variance 'should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender'" and the district court considered both of these factors in Vázquez's case. Id. (quoting Martin, 520 F.3d at 91). With regards to the nature and circumstances of Vázquez's current offense, the district court could reasonably be troubled by the fact that the machinegun was kept in a residence with three minor children.

Moreover, Vázquez's personal characteristics could also militate in favor of a higher sentence. Vázquez had been convicted of four weapons charges as a juvenile. Despite receiving a sentence of 27 months' probation, Vázquez had his probation revoked and served 20 months in a juvenile institution. Vázquez had been on release for less than a year and a half when he committed his present offense. Given Vázquez's near-immediate recidivism for a

similar offense, the district court could conclude that an above-Guidelines sentence was necessary to promote respect for the law and deter Vázquez from committing future offenses.  Given the nature of Vázquez's present offense and his personal characteristics, we conclude the district court's sentence of 60 months' imprisonment is substantively reasonable.

### III.  Conclusion

The district court's sentence is affirmed.

**Affirmed**.