# United States Court of Appeals
## For the First Circuit

No. 18-1265

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN MICHAEL GARCÍA-MOJICA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, Chief, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Joseph A. Niskar, Assistant Federal Public Defender, with whom Franco L. Pérez-Redondo, Research & Writing Specialist, Eric Alexander Vos, Federal Public Defender, and Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, were on brief, for appellant.
Antonio L. Pérez-Alonso, Assistant United States Attorney, Appellate Division, with whom Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

April 9, 2020

**TORRUELLA**, **Circuit Judge**.  In this appeal, John Michael García-Mojica ("García") challenges a 100-month sentence of imprisonment imposed for the convictions of possession of a firearm by a prohibited person and illegal possession of a machine gun. During a traffic stop, García was caught with a Glock pistol modified to shoot automatically with its serial number removed, two high-capacity magazines, and forty-seven rounds of ammunition. He confessed immediately and entered a straight plea of guilty. A probation officer recommended a sentence of forty-one to fifty-one months for both offenses based on the U.S. Sentencing Guidelines. At sentencing, the prosecutor challenged the probation officer's Guidelines calculation and requested a sentence of at least sixty-three months' imprisonment; in the alternative, the Government requested an upward variance, arguing that the Guidelines did not contemplate the severity of García's former state-court convictions for which he received a twenty-three year suspended sentence.  Defense counsel countered the prosecution's arguments and objected to the characterization of the underlying state-court convictions.  After stating it was giving García the benefit of the doubt and disclaiming reliance on the events beyond what was contained in the state-law convictions, the district court adopted the Guidelines calculation and then imposed an upward variance of forty-nine months' imprisonment. This appeal followed.

Challenging his punitive sentence, García claims that the district court erred by failing to adequately justify its sentence, relying on unsubstantiated facts, and ultimately, arriving at a substantively unreasonable result. His overtures unavailing, the sentence is affirmed.

**A.**

On December 13, 2016, at 1:25 a.m., the police in Sábana Grande, Puerto Rico were alerted to a suspicious vehicle with a flat tire.[1] The officers saw the vehicle with its hazard lights on and stopped parallel to it to ask if the occupants needed assistance. The driver stated he did not have a spare tire, and the officer, smelling marijuana, told the driver to pull over. Following the traffic stop, García, who was sitting in the backseat, exited the car, meanwhile dropping a thirty-round pistol magazine. The police arrested García and found a second magazine in his pocket. Additionally, the police recovered from García's waistband a model seventeen 9mm Glock pistol (loaded with a single round in the chamber) with an obliterated serial number. Later that day, García met with agents from the Bureau of Alcohol,

---

[1] The facts are derived from the change-of-plea colloquy, the undisputed sections of the presentence investigation report, and the sentencing hearing transcript. See United States v. Vázquez-Martínez, 812 F.3d 18, 20 (1st Cir. 2016) (citing United States v. Zapata-Vázquez, 778 F.3d 21, 22 (1st Cir. 2015)).

Tobacco, Firearms and Explosives, confirmed the police officer's account, and admitted that the seized firearm belonged to him, and that he had purchased the gun for $1,100 with the serial number removed and modified to shoot automatically.

On December 21, 2016, García was charged in a two-count indictment for violation of 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and 18 U.S.C. § 922(o) (illegal possession of a machine gun). Following discovery, the United States indicated that no plea offer would be tendered. García proceeded to enter a straight plea of guilty for both counts. A U.S. Probation Officer issued a presentence investigation report (PSR), which recommended an imprisonment term of forty-one to fifty-one months, based on a calculation of a total offense level of twenty-one and a criminal history category of II. The PSR recounted García's criminal history in Puerto Rico state court: four convictions for possession of a firearm without a license, a conviction for resisting public authority, and a conviction for conspiracy in violation of Puerto Rico Penal Code Article 249 of 2004.[2] The PSR described the last offense as "conspir[ing] to

---

[2] Article 249 reads: "[w]hen two (2) or more persons conspire or agree to commit a crime and have made specific plans regarding their participation, the time, the location, or the acts to be carried out, they shall be guilty of a misdemeanor. . . . If the agreement is to commit a first- or second-degree felony, they shall be guilty of a fourth-degree felony . . . ." P.R. Laws Ann.

-4-

commit murder, in the Food Court of San Patricio Plaza, at 5:00 p.m. using a firearm described as a black Glock, model 23, .40 caliber, ma[king] several shots causing the death of the human being Emmanuel J. Zapata-Casso." The PSR did not identify any factors warranting a departure from the advisory guidelines or a variance pursuant to 18 U.S.C. § 3553(a). Subsequently, both prosecution and defense submitted sentencing memoranda, and following delays from Hurricane María, the court sentenced García on March 12, 2018.

At the sentencing hearing, the United States objected to the PSR's Guidelines calculation, proposing a total offense level of twenty-three because García's prior conviction constituted a crime of violence and requesting a sentence of at least sixty-three months. Defense counsel did not object to the PSR when prompted by the court, but in response to the United States' objections to the Guidelines calculations, she requested a sentence within the PSR's proposed range. The United States then entreated the court to impose a variance, recounting the circumstances of García's state-court convictions[3] and explaining several additional reasons

---

tit. 33, § 4877.

[3] The prosecutor stated that in García's conspiracy-to-commit-murder case, García and another had shot several times at an individual in broad daylight at around 5:00 p.m. in the food court of San Patricio Plaza and killed that individual.

why the court should vary upwardly from the Guidelines. García's counsel objected to the Government's characterization of her client's conviction and posited that the Guidelines sentence accurately reflected García's criminal history. Asked why García was not "a candidate for an upward variance" considering "all these firearm violations," García's counsel explained that this was only "his second brush with the law" and asked the court to consider that the lenient sentence in state court could have been due to additional mitigating circumstances and lack of participation. She further explained that the current offense occurred during a routine traffic stop, and that García would be "exposed to the full 23 years of imprisonment [in state court] because of the present case."

After adopting the Guidelines sentencing range set forth in the PSR, the court explicitly stated it would "not go beyond" what was in the state-court convictions. The court then announced a 100-month term of imprisonment as "sufficient but not greater than necessary." The court focused its explanation on the seriousness of the firearms offenses, the leniency of a twenty-three year suspended sentence, and the fact that García was under state supervision when the instant offense was committed. It cited United States v. Flores-Machicote, 706 F.3d 16 (1st Cir. 2013), as evidence of the problem firearms pose in the District of

-6-

Puerto Rico.  After the pronouncement of the sentence, defense counsel lodged an objection to the sentence's procedural reasonableness.

This timely appeal followed.

**B.**

García challenges his sentence as both procedurally and substantively unreasonable.  In reviewing his claims, we first determine whether the district court committed a "procedural error, such as 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'"  United States v. Gierbolini-Rivera, 900 F.3d 7, 11-12 (1st Cir. 2018) (quoting United States v. Trinidad-Acosta, 773 F.3d 298, 309 (1st Cir. 2014)).[4]  "[I]f the sentence is procedurally sound, we then ask whether the sentence is substantively reasonable."  Id. at 12 (alteration in original) (quoting United States v. Rossignol, 780

---

[4] The court is required to "impose a sentence [that is] sufficient, but not greater than necessary" to accomplish the goals of sentencing by taking into consideration the § 3553(a) factors after correctly calculating the Guidelines sentence range.  See United States v. Rodríguez, 731 F.3d 20, 25-26 (1st Cir. 2013).

F.3d 475, 477 (1st Cir. 2015)). A sentence will be found "substantively reasonable so long as the sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'" Id. (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

García attacks the procedural reasonableness of his sentence for two reasons: the district court "fail[ed] to [adequately] justify the extent of the variance" and "premised the extent of the variance on unsupported allegations." The Government avers that García's objection to the sentence's procedural reasonableness was too general to secure review of the sentence under the abuse of discretion standard that García seeks on appeal. See id. ("We generally apply the deferential abuse of discretion standard to preserved challenges to the procedural reasonableness of a sentence." (citing United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014))). It is true that "[a] general objection to the procedural reasonableness of a sentence is not sufficient to preserve a specific challenge to any of the sentencing court's particularized findings," and claims first raised on appeal will be subject to the more formidable plain error standard of review.[5] United States v. Matos-de-Jesús, 856

---

[5] "Under that formidable standard, the appellant must show '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also

-8-

F.3d 174, 177–78 (1st Cir. 2017) (quoting <u>United States</u> v. <u>Soto-Soto</u>, 855 F.3d 445, 448 n.1 (1st Cir. 2017)). García responds that the current arguments were "at the forefront of the sentencing hearing and the primary point of contention between the parties." However, even assuming the more favorable standard of review, García's contentions would still fail. <u>See</u> <u>United States</u> v. <u>Caballero-Vázquez</u>, 896 F.3d 115, 120 (1st Cir. 2018).

García first argues that the district court failed to adequately articulate a basis for departing so significantly from the Guidelines range of forty-one to fifty-one months' imprisonment to impose a 100-month sentence. Given such a drastic variance, he contends, the court was obligated to offer an explanation commensurate to the extent of additional time. García puzzles over how the court could eschew reliance on the Government's representations of the 2011 Puerto Rico court convictions by giving García "every conceivable benefit of the doubt" and yet still impose such a punitive sentence. García insists that because the Guidelines accounted for the aggravated nature of the weapon during the pendency of a suspended sentence,

_____

(4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" <u>United States</u> v. <u>Matos-de-Jesús</u>, 856 F.3d 174, 178 (1st Cir. 2017) (alteration in original) (quoting <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001)).

-9-

in addition to his criminal history, the court's departure from the Guidelines required it to "articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation." United States v. Vázquez-Martínez, 812 F.3d 18, 24 (1st Cir. 2016) (quoting United States v. Zapete-García, 447 F.3d 57, 60 (1st Cir. 2006)).

While we agree with García that a "sentencing court's burden to explain its sentence increases the more that it deviates from the guideline range," Matos-de-Jesús, 856 F.3d at 179, the court here did just that. Reviewing the sentencing transcript, the court's explanation of its reasoning is thorough. While the court was certainly troubled by the circumstances already factored into the Guidelines calculation, it expressed additional concerns, including that García had not learned from his lenient state-court sentence for his prior weapons offenses[6] and had committed the instant offense only five years into his twenty-three year suspended sentence. The court also noted that García was carrying

---

[6] García contests whether the twenty-three year suspended state sentence was actually lenient. While defense counsel was free to argue that García's twenty-three year suspended sentence was the result of mitigating factors related to his level of participation in the underlying offense, the court was within its discretion to find those arguments unpersuasive and to determine that García's recent convictions evidenced that he had not learned from his "Herculean break" in state court.

extra ammunition, which contributed to the lethalness of the automatic weapon.[7]  Additionally, the court cited the problem of illegal weapons in Puerto Rico as pertinent to the seriousness of the present offense, nodding to Flores-Machicote, 706 F.3d at 22-23.  See also United States v. Santos-Rivera, 655 F. App'x 5, 7 (1st Cir. 2016) ("[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the need for deterrence." (alteration in original) (quoting United States v. Narváez-Soto, 773 F.3d 282, 286 (1st Cir. 2014))).  The sentencing court's articulation of these concerns regarding García's prior lenient treatment and pattern of serious weapons offenses in his particular community can be considered as falling outside the factors explicitly considered by the Guidelines, warranting additional deterrence and resulting in additional time.

García's second argument -- that the district court's variance can only be explained by its reliance on unsupported allegations -- is intertwined with his first. According to García, because the court failed to explain why he was distinguishable from other similarly situated defendants and did not articulate a compelling reason for almost doubling the recommended sentence, the court must have relied on the prosecution's characterization

---

[7] The Guidelines do not take into consideration the extra ammunition García was carrying when apprehended.

of his underlying state law conviction. García contends that consideration of these facts not in evidence essentially prejudiced the district court against him, overriding any mitigating factors offered by the defense.

This argument, however, fails simply due to the fact that the state-court convictions were properly before the court. The PSR (to which García did not object) stated that García was convicted for conspiring to commit murder leading to a death, and his own sentencing memorandum read that García had "conspired in the murder of a third person." While the prosecution implored the sentencing court to read more into the "asymmetry between Mr. García's [state court] punishment and his alleged conduct," it was within the court's discretion to take the convictions described in the PSR at face value when determining the appropriate sentence in light of the § 3553(a) factors. United States v. Acevedo-López, 873 F.3d 330, 340 (1st Cir. 2017) ("[Defendant] did not object to the summaries of these two incidents in the PSR, so the district court could treat those facts 'as true for sentencing purposes.'" (quoting United States v. Ocasio-Cancel, 727 F.3d 85, 91-92 (1st Cir. 2013))). Additionally, the sentencing judge expressly disavowed any reliance on facts beyond the convictions when it thoroughly articulated the aforementioned reasons for the variance. Because the court sufficiently explained the sentence

-12-

while relying on the facts properly before it, García's claims of procedural error fail.

Lastly, García incorporates his prior arguments of procedural error to challenge the sentence's substantive reasonableness (i.e., length), acknowledging that only a "plausible explanation" of the sentence is required. See United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). At sentencing, García "advocate[d] for a sentence shorter than the one ultimately imposed." Holguin-Hernández v. United States, 140 S. Ct. 762, 766 (2020). Therefore, we review his objections to the sentence's substantive reasonableness for an abuse of discretion. Id.

With respect to substance, "[s]entencing is much more an art than a science. A sentencing court is under a mandate to consider a myriad of relevant factors, but the weighting of those factors is largely within the court's informed discretion." Clogston, 662 F.3d at 593. "Although an appellate court must take into account the full extent of any variance, the dispositive question remains whether the sentence is reasonable in light of the totality of the circumstances." Vázquez-Martínez, 812 F.3d at 26 (quoting United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014)). The sentencing court here stated that it was considering both aggravating and mitigating factors, the latter

including acceptance of responsibility, physical and emotional conditions, and substance abuse, although in the end, it chose "not to attach to certain of the mitigating factors the significance that the appellant th[ought] they deserved." Clogston, 662 F.3d at 593. Instead, the court found that García's personal circumstances and the seriousness of his repeat firearm offenses warranted an above-Guidelines sentence. That is not an abuse of discretion.

García also laments that the district court neglected to consider "the aggregate length of his federal and state sentence as part of its duty to consider the § 3553(a) factors." Upon review, it appears instead that the district court considered this and the possibility that García could be liable for the imposition of the entire twenty-three year state sentence and still found the aggravating factors outweighed the mitigating factors. As the sentence is within the "universe of reasonable sentencing outcomes," United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015) (quoting Clogston, 662 F.3d at 592), we cannot find it substantively unreasonable.

**Affirmed**.