# United States Court of Appeals
## For the First Circuit

Nos. 20-1905, 20-1907

UNITED STATES OF AMERICA,

Appellee,

v.

HERMIN RODRIGUEZ-MONSERRATE, a/k/a Cano, a/k/a Canito.

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

Arza Feldman, with whom Feldman and Feldman was on brief, for appellant.
Robert P. Coleman III, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, were on brief, for appellee.

December 30, 2021

**KAYATTA**, **Circuit Judge**. In this consolidated appeal, Hermin Rodriguez-Monserrate raises a host of procedural and substantive challenges to two sentences he received at hearings conducted via videoconference during the COVID-19 pandemic. We find that all but one of his challenges are waived or otherwise without merit and that his remaining challenge is not yet ripe for review. Our reasoning follows.

## I.

This case arises out of the following events. In 2019, law enforcement agents saw a gun and magazines on a ledge near a window to the apartment occupied by Rodriguez's romantic partner. The partner allowed agents to search her apartment while Rodriguez was present. During the search, agents found ammunition, marijuana, face masks, a radio scanner, and various gun holsters. Rodriguez was arrested and admitted that most of these items were his, though he denied owning the gun and associated magazines found on the ledge.[1] Rodriguez further admitted that, at the time of his arrest, he had been convicted of a felony and was serving a term of supervised release.

Rodriguez's arrest led to two actions against him. First, the government charged him with committing a new crime:

---

[1] Rodriguez's partner told the agents the gun belonged to Rodriguez. Neither party contends that this factual dispute is salient to the issues on appeal.

- 2 -

possessing ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Second, the government sought revocation of his supervised release.

At an in-person hearing in February 2020, Rodriguez pleaded guilty to the section 922(g)(1) charge pursuant to a plea agreement in which the parties agreed to seek a prison term of 30 months.  The agreement specified that Rodriguez waived his "right to appeal any aspect of [the] case's judgment and sentence, including but not limited to the term of imprisonment . . . and conditions of supervised release" so long as his sentence did not exceed 37 months.

Rodriguez's sentencing hearing on the section 922(g)(1) conviction was scheduled to be held on the same day as the hearing on the government's request to revoke his supervised release.  By the time those hearings were to occur, in August 2020, the COVID-19 pandemic had caused the United States District Court for the District of Puerto Rico to continue all in-person proceedings until October 2020.  See Third Am. Order Continuing Civil & Criminal Proceedings, Misc. No. 20-0088 (GAG) (Aug. 25, 2020), ECF No. 21.[2] Accordingly, the district court sought Rodriguez's consent to proceed via videoconference.  The court obtained that consent in

---

[2]  Both hearings had already been continued once before due to the COVID-19 pandemic; they were previously scheduled to occur on May 27, 2020.

- 3 -

two ways.  First, Rodriguez filed a motion "respectfully request[ing] th[e] court to take note of his consent and to hold the [sentencing] hearing via videoconference."  Second, at the start of the August 2020 proceedings, the court orally confirmed on the record that Rodriguez's "appear[ance] by video" was "voluntary" and that he "[did] not have to appear by video."  The court told Rodriguez that he could consent to appear by video for both his sentencing and revocation hearings.  Rodriguez consented to conducting both hearings by videoconference.

The court sentenced Rodriguez on the section 922(g)(1) conviction to 37 months -- the upper bound of the guideline range. The district court also imposed as one of several conditions of supervised release a requirement that Rodriguez "shall complete his high school education."

The court conducted Rodriguez's revocation hearing during the same videoconference pursuant to Rodriguez's earlier consent.  The government sought a 10-month revocation sentence based on an estimated guideline range of 4-10 months, but the probation officer calculated the range to be 12-18 months.  The court agreed with the probation officer and imposed an 18-month revocation sentence, to be served consecutive to the 37-month sentence for the section 922(g)(1) conviction.

During each hearing, Rodriguez asked the court to reconsider the pertinent sentence.  The court denied each request.

- 4 -

Rodriguez now brings an array of challenges to both of his sentences.

## II.

We begin with the revocation hearing and sentence. Unimpeded by his appeal waiver, which applies only to his sentence for the section 922(g)(1) conviction, Rodriguez raises two types of challenges to his revocation hearing and sentence. First, he argues that, notwithstanding his consent to proceed by videoconference, the district court erred in conducting the revocation hearing in that manner. Second, he argues that his revocation sentence was procedurally and substantively unreasonable. For the following reasons, both claims fail.

## A.

Rodriguez argues that the district court erred in conducting his revocation hearing via videoconference because doing so was impermissible under both Federal Rule of Criminal Procedure 32.1 and the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). Rodriguez did not raise these arguments below; rather, he consented to proceeding via videoconference, telling the district court that he "want[ed] to appear here and now." Hence, Rodriguez is at best entitled to plain error review. See United States v. Delgado-Sánchez, 849 F.3d 1, 6 (1st Cir. 2017). In his opening brief on appeal, Rodriguez makes no attempt to satisfy that standard as to

his arguments based on either Rule 32.1 or the CARES Act. Those arguments are therefore waived. United States v. Pabon, 819 F.3d 26, 33-34 (1st Cir. 2016) (failure to address plain error standard waives challenge); Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000) ("[I]ssues advanced for the first time in an appellant's reply brief are deemed waived.").

Rodriguez also briefly asserts that proceeding by videoconference "impacted his right to the effective and meaningful assistance of counsel." Again, though, he made no claim below that the particular video format employed by the court impaired his ability to consult confidentially with his lawyer. Indeed, he does not dispute that the district court explained, "If you want to speak with your lawyer before I sentence you, or before I make a decision on your revocation, please let us know, and we will make arrangements for both of you to have a confidential communication." Nor does Rodriguez develop on appeal any argument as to how the format plainly impaired his ability to receive the assistance of counsel. This argument is therefore both forfeited and waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); Pabon, 819 F.3d at 33-34.

**B.**

Rodriguez next attacks his revocation sentence on procedural and substantive grounds. These challenges also fail.

We begin with procedural reasonableness. Rodriguez does not direct our attention to any objection below that was "sufficiently specific to call the district court's attention to the asserted [procedural] error," as required to preserve for appellate review an argument that a sentence is procedurally unreasonable. United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017). We must therefore conclude that the argument was not preserved, and is subject to plain error review. Because Rodriguez does not attempt to satisfy that standard of review, his procedural reasonableness argument is waived on appeal. Pabon, 819 F.3d at 33–34.[3]

In contrast, Rodriguez preserved his substantive reasonableness challenge below by "advocat[ing] for a sentence shorter than the one ultimately imposed." United States v. García-Mojica, 955 F.3d 187, 194 (1st Cir. 2020) (quoting Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020)). We

---

[3] The crux of Rodriguez's procedural reasonableness claim seems to be that the sentencing court disregarded his arguments for leniency. We shortly return to -- and reject -- this contention. Thus, even if Rodriguez had preserved his procedural reasonableness claim before the sentencing court and had not waived it on appeal, it would fail for the reasons discussed below.

therefore review for abuse of discretion the substantive reasonableness of the sentence.  Id.

A sentence is substantively reasonable if it rests on "a plausible sentencing rationale" and reaches "a defensible result." United States v. Cox, 851 F.3d 113, 120 (1st Cir. 2017) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).  The "universe of reasonable sentences" is "expansive."  Id. (quoting United States v. King, 741 F.3d 305, 308 (1st Cir. 2014)).  And "[w]e have repeatedly emphasized that '[a] challenge to the substantive reasonableness of a sentence is particularly unpromising when the sentence imposed comes within the confines of a properly calculated [guideline range].'"  Id. at 126 (second alteration in original) (quoting United States v. Demers, 842 F.3d 8, 15 (1st Cir. 2016)).

Rodriguez's revocation sentence is substantively reasonable.  The district court imposed a sentence within (albeit at the high end of) the probation officer's proffered guideline range, and Rodriguez does not argue that the range was improperly calculated.  The district court also provided a plausible rationale for the sentence when it explained that Rodriguez's "new criminal conduct . . . has shown his serious disrespect for the law and his lack of commitment to make changes towards a pro-social reintegration into society." The court determined "that a sentence at the high end of the guidelines [was] sufficient but not greater

than necessary in this case" given Rodriguez's "noncompliance history and characteristics."

On appeal, Rodriguez focuses on the district court's failure to address potentially mitigating evidence, including his "extremely difficult childhood," his learning disability, and his responsibilities caring for his ailing mother. But this court "do[es] not require an express weighing of mitigating and aggravating factors or that each factor be individually mentioned." United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012). We have upheld sentences imposed after the district court "ha[s] read the defense's sentencing memo and ha[s] heard the defense's leniency plea." United States v. Dávila-Bonilla, 968 F.3d 1, 12 (1st Cir. 2020). That is precisely what happened here. Further, the presentence investigation report -- which the court referenced before the revocation hearing -- described Rodriguez's childhood, his learning disability, and his mother's ill health/medical needs. So the fact "that the district court did not explicitly mention [mitigating factors] during the sentencing hearing suggests they were unconvincing, not ignored." Lozada-Aponte, 689 F.3d at 793.

**III.**

Rodriguez also raises a host of challenges to his sentence on the section 922(g)(1) conviction for possessing

ammunition. We begin with the question whether Rodriguez effectively waived his right to appeal that sentence.

## A.

Rodriguez's plea deal contained the following provision:

> Defendant knowingly and voluntarily agrees that, if the total term of imprisonment imposed by the Court is 37 months or less, the defendant waives the right to appeal any aspect of this case's judgment and sentence, including but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

Rodriguez signed the document containing this provision and, after consulting with his lawyer off the record, confirmed he understood that if the district court "sentence[d] [him] according to the terms, conditions, and recommendations contained in [his] plea agreement, [he] waive[d] and g[a]ve up [his] right to appeal [the] sentence and the judgment in the case."

Rodriguez challenges his waiver as inadequate under Federal Rule of Criminal Procedure 11(b)(1)(N), which requires a district court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Because Rodriguez did not preserve any purported Rule 11(b)(1)(N) error below, we consider his argument only on plain error review. United States v. Morillo, 910 F.3d 1, 3 (1st Cir. 2018). To satisfy that stringent standard, Rodriguez must

- 10 -

demonstrate "(1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Borrero-Acevedo, 533 F.3d 11, 15 (1st Cir. 2008) (cleaned up) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)).  To satisfy the third prong of this test, Rodriguez must "show a reasonable probability that, but for the [Rule 11] error, he would not have entered the plea." Id. at 16 (alteration in original) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004)).  If Rodriguez clears each of these hurdles, we "may then exercise [our] discretion to notice [the] forfeited error, but only if" the Rule 11 error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 15 (third alteration in original) (internal quotation marks omitted) (quoting Johnson, 520 U.S. at 467).

Rodriguez alleges that the district court failed to confirm that he "freely, knowingly and intelligently waived his right to appeal."  Rodriguez claims "eight discrete" errors with the court's inquiry:  He argues that the court did not "explain the [waiver's] ramifications"; explain its meaning "in plain English"; explain that "the length of the sentence would be firm and final"; "question[] the defendant about his understanding of the waiver"; "ask[] the defendant if he had any questions about the waiver"; "ask[] the defendant if anyone had forced or coerced him to waive his right to appeal"; "advise[] the defendant

- 11 -

that . . . he would be statutorily entitled to free counsel" if he proceeded to trial and appeal; or "specifically ask[] [Rodriguez] if he had discussed the appellate waiver with counsel."

Through his objections, Rodriguez effectively describes his ideal plea colloquy. But while he is correct that Rule 11(b)(1)(N) requires a district court to ascertain that a defendant understands and freely accepts his plea waiver, we have "refrain[ed] from prescribing any mandatory language for such an inquiry" so long as "the court's interrogation [is] specific enough to confirm the defendant's understanding of the waiver and [his] acquiescence in the relinquishment of rights that it betokens." United States v. Teeter, 257 F.3d 14, 24 n.7 (1st Cir. 2001).

None of Rodriguez's complaints about this colloquy rises to the level of establishing error, plain or otherwise. Rodriguez's colloquy was quite similar to the one we upheld under a less deferential standard of review in United States v. De-La-Cruz Castro, 299 F.3d 5 (1st Cir. 2002). In that case, the court "asked Cruz Castro and his counsel if he knew 'that by entering into this plea agreement and entering a plea of guilty [he] would have waived or given up [his] right to appeal all or part of [his] sentence,'" and "Cruz Castro answered, 'Yes, sir.'" Id. at 12 (alterations in original). "The district court also determined that Cruz Castro's counsel had 'explained this agreement to Cruz Castro in Spanish and [was] satisfied that he [understood] it.'"

- 12 -

Id. (alterations in original).  We upheld the waiver in that case despite the district court's "indicat[ion] that [the defendant] could appeal 'in some circumstances,'" id. -- a potentially confusing qualification not given here.

At Rodriguez's in-person change-of-plea hearing, the prosecutor explained the plea agreement, including its "waiver of appeal which indicates that the Defendant knowingly and voluntarily agrees that if the total term of imprisonment is 37 months or less, the Defendant waives his right to appeal this case's judgment."  The court asked Rodriguez if he "agreed with the [prosecutor's] summary" of the agreement, and Rodriguez said "Yes."  The court then confirmed that Rodriguez's counsel had "explain[ed] the plea agreement" to Rodriguez "[w]ord for word" "in Spanish," and that counsel was "satisfied that [Rodriguez] underst[ood] it."  Rodriguez then confirmed that he understood the plea agreement's terms.

The court then asked Rodriguez whether he understood the appellate waiver specifically.  Rodriguez initially professed some uncertainty and was permitted to consult with counsel off the record.  Afterward, Rodriguez confirmed that he understood that he would "waive and give up [his] right to appeal [the] sentence and the judgment in the case" if the judge sentenced him "according to the terms, conditions, and recommendations contained in [the] plea agreement."  The court then ascertained that no one had "made any

promise or assurance to . . . induce" Rodriguez to sign the plea agreement, that no one had "attempted in any way to force" him to do so, and that he was "pleading guilty of [his] own free will."

Most of Rodriguez's numerous challenges to the colloquy boil down to one broad contention: that the court should have done more to "explain to him, in plain English, what [the] waiver meant, namely, the loss of appellate rights." But the court asked Rodriguez: "[D]o you understand that if I sentence you according to the terms, conditions, and recommendations contained in your plea agreement, you waive and give up your right to appeal your sentence and the judgment in the case?" We think this language is sufficiently clear -- indeed, it is perhaps clearer than language we have upheld in other cases. See, e.g., United States v. González-Colón, 582 F.3d 124, 127 (1st Cir. 2009) ("Do you understand that by pleading guilty, you will be held accountable to the waiver of appeal clause that appears in your respective plea agreements?"); United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006) ("Do you understand that by entering into this plea agreement you may have waived or given up your right to appeal or collaterally attack all or part of the sentence?").

Beyond that, the court ensured that Rodriguez and his counsel had reviewed the plea agreement "[w]ord for word" "in Spanish" before Rodriguez signed it, and that Rodriguez had freely

consented to the agreement. In short, we are satisfied that the court did not plainly err in conducting its 11(b)(1)(N) inquiry.

**B.**

Finding that the district court did not plainly err in performing its duties under Rule 11(b)(1)(N) does not quite end our analysis. A valid appeal waiver does not necessarily prevent us from averting a miscarriage of justice. Morillo, 910 F.3d at 3-4. And we have explained that, "[a]s a subset of this premise," we may "refuse to honor" a valid appeal waiver "when the district court plainly errs in sentencing." Teeter, 257 F.3d at 25. So we turn to the substance of Rodriguez's complaints about his sentencing. We do so not to search again for error per se, but to make sure that there is no error so "egregious" as to warrant setting aside the valid appeal waiver. United States v. Goodman, 971 F.3d 16, 21 (1st Cir. 2020) (quoting United States v. Villodas-Rosario, 901 F.3d 10, 18 (2018)).

Rodriguez argues that conducting his sentencing hearing via videoconference was impermissible under Federal Rule of Criminal Procedure 43 and the CARES Act notwithstanding his consent.[4] For the following reasons, we see no egregious error here rising to the level of a miscarriage of justice.

---

[4] Rodriguez also gestures at an ineffective assistance of counsel claim, largely reprising the sparse argument discussed above. It fails for the reasons already described.

We begin with Rule 43. Federal Rule of Criminal Procedure 43(c) provides that a defendant "who ha[s] pleaded guilty . . . waives the right to be present" at sentencing when he "is voluntarily absent during sentencing" "in a noncapital case." A fortiori, it is by no means clear that a defendant could not opt to appear by videoconference, rather than not at all as permitted by the rule. In resisting this conclusion, Rodriguez points to cases in which several of our sister circuits concluded that Rule 43 does not permit sentencing via videoconference where the defendant has not affirmatively consented to that format. See United States v. Williams, 641 F.3d 758, 763-65 (6th Cir. 2011); United States v. Torres-Palma, 290 F.3d 1244, 1245 (10th Cir. 2002); United States v. Lawrence, 248 F.3d 300, 302-05 (4th Cir. 2001); United States v. Navarro, 169 F.3d 228, 235 (5th Cir. 1999). Because Rodriguez did affirmatively consent to videoconferencing, those cases are inapposite. Also distinguishable is the Seventh Circuit's decision United States v. Bethea, 888 F.3d 864 (7th Cir. 2018). In that case, the defendant argued that questions of consent (or waiver) were irrelevant. See id. at 866. However, he had not previously entered his plea in person, which the Seventh Circuit determined was required under Rule 43. Id. at 867. Here, Rodriguez entered his plea in person several months before his sentencing videoconference. As a result, the Seventh Circuit's reasoning in Bethea does not apply.

- 16 -

Of course, even if videoconferencing were permissible under Rule 43, it is possible that the CARES Act's apparently more robust requirements for remote sentencing should govern. The CARES Act permits sentencing via videoconference under certain public health conditions related to COVID-19. § 15002(a)-(b), 134 Stat. at 527-30. Even then, videoconferencing is permissible only if the defendant consents "after consultation with counsel" and "the district judge in a particular case finds for specific reasons that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice." Id. § 15002(b)(2)(A), (4), 134 Stat. at 528-29. On appeal, Rodriguez faults the district court for failing to conduct the interests-of-justice analysis and for "failing to ask [him] if he had conferred with counsel about his decision to waive his physical presence."

As to the first contention, the parties agree that the court did not (as required by the Act) offer any "specific reasons that" Rodriguez's sentencing hearing could not "be further delayed without serious harm to the interests of justice." CARES Act § 15002(b)(2)(A), 134 Stat. at 528-29.

As to the second contention, Rodriguez stops short of claiming that he did not, in fact, confer with counsel prior to waiving his right to appear in person -- rather, he complains that "there is no proof he waived his physical presence at sentence

only after conferring with counsel." Yet this claim is directly contradicted by the pre-hearing filing in which Rodriguez confirmed that he was consenting to videoconference "[a]fter thorough discussion with his attorney." The court again addressed the issue during the August 2020 proceedings. Shortly before asking whether Rodriguez "wish[ed] to waive [his] right to appear in person . . . and to appear instead by video," the district court confirmed that Rodriguez understood he had "a right to consult with [his] lawyer" before the sentencing and revocation hearings. The court then asked Rodriguez's attorney if there was "any reason why [it] should not accept" Rodriguez's waiver, and counsel said he knew of none. The district court concluded that Rodriguez had "knowingly and voluntarily waived his right to appear physically" "after consulting with his attorney."

How to ultimately reconcile Rule 43 with the CARES Act, we need not decide. Even if there was error here because the district court failed to strictly comply with the CARES Act, such error would not come close to making this an "egregious case[]" triggering the miscarriage-of-justice exception to plain error forfeiture. On these facts, neither the error nor its impact on Rodriguez would be "grav[e]." González-Colón, 582 F.3d at 128 (quoting Gil-Quezada, 445 F.3d at 37).

Nor does Rodriguez's use of the phrase "structural defect" to describe this rather prosaic and relatively

- 18 -

inconsequential procedural error change the equation. Structural errors comprise a "tiny class," which "includes only the most pervasive and debilitating errors" that "infect '[t]he entire conduct of [a] trial from beginning to end.'" United States v. Padilla, 415 F.3d 211, 219 (1st Cir. 2005) (en banc) (first alteration in original) (quoting Arizona v. Fulminante, 499 U.S. 279, 309 (1991)). Here, proving structural error is an especially daunting task: Because Rodriguez did not raise his claim below, plain error review applies. United States v. Lara, 970 F.3d 68, 86 (1st Cir. 2020) ("The plain error standard of review applies . . . even to challenges to structural errors if they were not raised below." (citing Johnson, 520 U.S. at 466)), cert. denied sub nom. Williams v. United States, 141 S. Ct. 2821 (2021).

Perhaps Rodriguez believes that the district court would have been more receptive to his entreaties for leniency had he appeared in person. But while we do not doubt the value of in-person sentencing as a general matter, Rodriguez has failed to persuade us that proceeding via videoconference during a global pandemic with the express consent of a criminal defendant constitutes error sufficiently grave to warrant setting aside an otherwise valid appeal waiver.

## c.

As to his sentence on the section 922(g)(1) conviction, Rodriguez argues that the district court erred when it "failed to

either explicitly or implicitly rule on appellant's motion for a downward departure due to extraordinary family circumstances." For its part, the government maintains that Rodriguez never made such a motion.

Even assuming arguendo that Rodriguez's requests for leniency constituted a motion for a downward departure, this challenge fails. Rodriguez does not attempt to show that sustaining the sentence would work a miscarriage of justice. As a result, his claim cannot survive his valid appeal waiver.

**D.**

Rodriguez also alleges that his within-guideline-range sentence was substantively unreasonable. But, once again, Rodriguez fails to argue that sustaining the sentence would work a miscarriage of justice. So his valid appeal waiver dooms this claim as well.

**E.**

Finally, Rodriguez argues that the district court erred by ordering him to "complete his high school education" as a condition of supervised release included in his sentence on the section 922(g)(1) conviction. Rodriguez's valid appeal wavier covers conditions of supervised release, so we again consider whether Rodriguez has demonstrated a miscarriage of justice. Because we have suggested that plain sentencing error is "a subset"

of the miscarriage-of-justice exception, Teeter, 257 F.3d at 25, we use the two standards interchangeably in this analysis.

Rodriguez concedes that "[d]istrict courts have significant flexibility to impose special conditions of supervised release." United States v. Garrasteguy, 559 F.3d 34, 41 (1st Cir. 2009). Accordingly, he does not argue that a district court is without authority to impose educational conditions of supervised release. Nor does he dispute that educational opportunities can "benefit [a] defendant so that . . . he's better equipped to not re-commit crimes." Rather, he asserts that on the "unusual facts" of his particular case, imposing a mandatory educational condition was plain error. Rodriguez has a documented learning disability and failed to complete the fourth grade on four separate occasions.

We are sympathetic to Rodriguez's claim that his liberty should not be curtailed if he fails to "complete his high school education" after a good-faith effort.[5] And, given Rodriguez's educational history, he may not be an ideal candidate for the sort of mandatory educational requirement the district court imposed. Cf. United States v. McKissic, 428 F.3d 719, 724 (7th Cir. 2005) (opining that a requirement to complete high school was "especially

---

[5] Rodriguez's stated "inten[tion] to use the [Bureau of Prisons] to complete his education" and his request to serve his sentence in a facility where he could pursue a GED suggest he will make such a good-faith effort.

suited to" the defendant, who had "nearly completed his high school education").  That being said, Rodriguez expressed a desire to continue his education while incarcerated, and nothing in the record conclusively illustrates that he cannot find a way to satisfy the court-imposed condition.

On the whole, we think it too soon to say more about this issue given the limitations of our review.  Rodriguez has more than three years of his prison term yet to serve.  Certainly Rodriguez need try to complete a high school education.  If he succeeds, the better for everyone, and the issue disappears.  Conversely, should he fail, he can ask the district court to modify the mandatory educational condition under Federal Rule of Criminal Procedure 32.1(c).[6]  Should the district court deny his request, Rodriguez can appeal that denial, and his challenge will be ripe for our review.  Cf. United States v. Davis, 242 F.3d 49, 51 (1st Cir. 2001) (per curiam) (challenge was ripe where petitioner's "term of supervised release [would] commence in less than two months"); United States v. Medina, 779 F.3d 55, 67 (1st Cir. 2015) (challenge was ripe where petitioner "could be subject to the

---

[6] We have previously noted that "[t]he showing required for a defendant to obtain a modification of a condition of supervised release pursuant to [18 U.S.C. § 3583(e)] is an open question in this circuit."  Garrasteguy, 559 F.3d at 43 n.12.  Whatever the appropriate standard, we feel confident that it is less stringent than the miscarriage-of-justice standard that governs our own review in this appeal.  See id. (comparing standards adopted by two of our sister circuits).

condition he challenges in the near term").  And the record at that time will contain much more information, facilitating a more informed evaluation of the condition's validity, likely under a different standard than the one that controls our review of this direct appeal of the imposition of the condition.

## IV.

For the foregoing reasons, we <u>affirm</u> Rodriguez's sentences.