# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3226

_____

United States of America,                          *
                                                   *
            Appellee,                              *
                                                   *    Appeal from the United States
      v.                                           *    District Court for the
                                                   *    Northern District of Iowa.
Stephen Espinosa,                                  *
                                                   *
            Appellant.                             *

_____

Submitted: April 15, 2008
Filed: August 27, 2008

_____

Before MURPHY, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

On May 24, 2007, Stephen Espinosa pled guilty to conspiracy to manufacture 5 grams or more of methamphetamine and manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and entered an *Alford* plea to possession of a firearm as an unlawful user of methamphetamine, in violation of 18 U.S.C. § 922(g)(3). *See North Carolina v. Alford*, 400 U.S. 25 (1970). For purposes of determining the advisory sentencing range, the district court[1] grouped the conspiracy

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

and the manufacturing counts pursuant to USSG § 3D1.2(d), and sentenced Espinosa to 140 months' imprisonment, the bottom of the guidelines range. Espinosa argues that the district court erred by not grouping the firearms count as well. We affirm.

On February 28, 2005, police in Mason City, Iowa, knocked at the door of a house owned by Cathy Scholl, where Espinosa also lived. The police were trying to locate Espinosa's friend, Jon Wilmarth, for whom they had an arrest warrant. Scholl, the only one present, consented to a search of the house and a nearby free-standing garage. The police found the garage locked, and Scholl did not have the key. Espinosa arrived at the house around this time, unlocked the garage, and consented to its search. Upon entering the garage, the police saw in plain view items commonly used to manufacture methamphetamine. They secured the scene while making application for a search warrant. Once a warrant was issued, the search resumed, and police discovered 8.5 grams of pure methamphetamine, and nine firearms, including six rifles and three shotguns. Espinosa later stipulated that the firearms and various other personal property in the garage had been stolen during a residential burglary in Kenseet, Iowa, on February 9, 2005.

Espinosa was indicted for conspiracy to manufacture five grams or more of methamphetamine, manufacturing methamphetamine, and possession of a firearm as an unlawful user of methamphetamine. He pled guilty to the first and second counts, and entered an *Alford* plea to the third count.

At sentencing, in determining the advisory guideline range, the district court grouped the conspiracy to manufacture and the manufacturing counts pursuant to USSG § 3D1.2(d). Espinosa argued that the firearm count should also be grouped, because the firearms were connected with the drug activity. The district court rejected this contention, remarking that "it's a very close call . . . a tough question," and that its decision not to group the firearm count came "with a great degree of reluctance and with little or no confidence." The district court sentenced Espinosa to 140 months'

imprisonment, the bottom of the advisory guideline range. Had the district court also grouped the firearms count, the advisory range would have been 120 to 150 months' imprisonment, and the district court indicated that it would have sentenced Espinosa to 120 months if the lower advisory range had applied.

The sole issue raised on appeal is whether the district court erred in calculating the advisory guideline range by not grouping the firearm count with the drug counts under USSG § 3D1.2. An error in calculating the guideline range would be a procedural error within the meaning of *Gall v. United States*, 128 S. Ct. 586, 597 (2007). We review the district court's factual findings for clear error, and its application of the guidelines *de novo*. *United States v. Green*, 225 F.3d 955, 958 (8th Cir. 2000). Guideline § 3D1.2 instructs that "[a]ll counts involving substantially the same harm shall be grouped together," and outlines four situations in which counts involve substantially the same harm. "Counts are to be grouped together into a single Group if any one or more of the subsections provide for such grouping." USSG § 3D1.2, comment. (n.1).

Espinosa argues that grouping was warranted based on the factors listed in USSG § 3D1.2(a). This subsection states that counts should be grouped if they "involve the same victim and the same act or transaction." Espinosa contends that the victim of both his drug and gun offenses is society at large, and that the societal interests implicated by both counts are "closely related because they both target protecting society from the harms associated with drug use and addiction." Espinosa further argues that the conduct underlying the gun and drug counts was proximate in terms of "time, purpose, location, and a similarity of elements of the different counts."

Espinosa's plea agreement stipulates that the firearms in question "were stolen during the burglary of a residence in Kensett, Iowa, on or about February 9, 2005." The presentence investigation report concluded that "[it] does not appear as if these weapons were connected to [the defendant's] manufacturing activities." The district

-3-

court decided that "probation scored it correctly by not grouping," and we understand this to mean that the court agreed that the firearms were not connected to Espinosa's manufacture of methamphetamine.

This finding is not clearly erroneous. The firearms were stolen at the same time as a variety of other personal property, including tools, construction equipment, and copper wire, none of which was connected to the drug manufacturing activity. Espinosa stored all of the stolen property together in the same free-standing garage. That the methamphetamine was produced in the same garage does not dictate a conclusion that the guns and drugs were connected. While firearms are "tools of the trade," and can be used for protection of illegal narcotics, it is not inevitable that firearms located in proximity to drugs are related to the drug activity. *See United States v. Massey*, 462 F.3d 843, 846-47 (8th Cir. 2006). None of these firearms was loaded, and all were long rifles or shotguns, rather than a type of firearm (such as a handgun or short-barreled shotgun) that is more likely to accompany illegal drug activity. *See id.* at 846. The record is not inconsistent with the possibility that Espinosa used the garage for two independent purposes: to store miscellaneous stolen property that might later be fenced, and to produce methamphetamine that might later be consumed or distributed. Thus, we conclude that the district court did not err by failing to group Espinosa's gun and drug counts under § 3D1.2(a).

Espinosa also contends that the district court should have grouped the firearm and drug counts under § 3D1.2(c). Subsection (c) states that "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guidelines applicable to another of the counts," the several counts shall be grouped. While it is true that Espinosa's sentence based on the drug and gun counts could have been enhanced on the basis of one another, USSG § 2D1.1(b)(1); § 2K2.1(b)(6), neither enhancement was sought or applied in his case. Espinosa, quoting *United States v. Bell*, 477 F.3d 607, 615 (8th Cir. 2007), argues that grouping "is proper [under § 3D1.2(c)] even though the applicable enhancements are not

utilized." In *Bell*, however, the defendant was convicted of three "closely intertwined" but separate offenses arising from the same conduct, and a specific offense characteristic for possession of a firearm would have applied with respect to the defendant's drug conviction, but for a special rule that makes the enhancement unavailable when there is also a conviction under 18 U.S.C. § 924(c). 477 F.3d at 615; USSG § 2K2.4, comment. (n.4). Here, the district court did not apply a specific offense characteristic for firearms possession when sentencing on Espinosa's drug count, and the record does not dictate a conclusion that the two offenses were closely intertwined as in *Bell*. This case is more comparable to *United States v. Winters*, 411 F.3d 967 (8th Cir. 2005), where we upheld a district court's decision not to group a firearms count and a drug count, because the crimes "did not have a common victim, were not part of the same act or transaction, and did not involve similar conduct." *Id*. at 975.

Finally, Espinosa argues that the district court should have grouped the firearm and drug counts pursuant to § 3D1.2(d). That subsection, however, provides for grouping of counts to which different offense guidelines apply only if the offenses are "of the same general type" and otherwise meet the criteria for grouping. USSG § 3D1.2, comment. (n.6); *United States v. Shevi*, 345 F.3d 675, 681 (8th Cir. 2003). The offenses for which Espinosa was convicted are not "of the same general type." One was a drug manufacturing offense, and one was a firearms offense, and for the reasons discussed, it was not clearly erroneous to find that the firearms offense was unconnected to the drug manufacturing offense.

For these reasons, the judgment of the district court is affirmed.

_____