# United States Court of Appeals
## For the First Circuit

No. 16-2309

UNITED STATES OF AMERICA,

Appellee,

v.

ALAN KETCHEN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Barron, Selya, and Stahl,
Circuit Judges.

Ronald W. Bourget, for defendant-appellant.
Benjamin M. Block, Assistant U.S. Attorney, with whom Richard
W. Murphy, Acting U.S. Attorney, was on brief, for appellee.

December 13, 2017

**STAHL**, **Circuit Judge**. Alan Ketchen appeals from an order denying his motion to withdraw his guilty plea for conspiracy to distribute 3,4-Methylenedioxypyrovalerone (MDPV), also known as "bath salts," and for maintaining a drug-involved residence. Ketchen claims his guilty plea was not knowing and voluntary because the district court did not sufficiently apprise him of the necessary scienter for a conviction under the Controlled Substance Analogue Enforcement Act of 1986 ("Analogue Act"), 21 U.S.C. § 802(32)(A). Ketchen largely bases his argument on the Supreme Court's decision in McFadden v. United States, 135 S. Ct. 2298 (2015), which was issued after he entered his plea but before he was sentenced. Ketchen also challenges the factual determinations the court made in calculating his sentence. After careful review, we affirm.

## I.

In December 2010, Ketchen learned about MDPV from a "longtime drug addict." Ketchen understood that MDPV was a "rave drug" that people used to "stay up all night and go partying all night, dance, have sex or whatever." Ketchen began using MDPV and quickly developed a "horrible" addiction. By March or April 2011, Ketchen started selling MDPV out of his house in Bangor, Maine to support his habit, and eventually became one of the largest dealers of MDPV in the Bangor area. Ketchen often received up to $5,000 in single transactions, provided MDPV to customers without asking

for up-front payment if they would make deliveries on his behalf, and also accepted stolen goods as payment for the drug. During the same period, Ketchen sold other controlled substances, including Suboxone, Xanax, Klonopin, and ecstasy.

In his acceptance of responsibility statement made to the probation department after his plea, Ketchen claimed he initially believed he was selling a legal drug, but eventually realized otherwise:

> At some point I became aware that I was selling and using an illegal drug. I was out of control . . . . I started selling MDPV out of my apartment and was clear that the laws changed or at least my perception of the law changed. I was not just selling a legal synthetic chemical, I was selling an illegal drug and using an illegal substance. I was being supplied an illegal drug, selling an illegal drug, and getting enough to use in return.

On November 10, 2011, Ketchen was arrested at his residence along with one of his co-conspirators. The police conducted a search of his residence and found a total of 1,110.5 grams of MDPV, as well as other controlled substances, digital scales, drug paraphernalia, notebooks listing drug debts, and $11,462 in cash.

On July 17, 2013, Ketchen was indicted for conspiracy to distribute and possession with intent to distribute MDPV and for maintaining a drug-involved residence. The indictment relied on both the Analogue Act and the Controlled Substances Act ("CSA")

because during the time of the conspiracy, MDPV's classification was changed from a controlled substance analogue to a Schedule I controlled substance. Schedules of Controlled Substances: Temporary Placement of Three Synthetic Cathinones Into Schedule I, 76 Fed. Reg. 65371 (Oct. 21, 2011) (to be codified at 21 C.F.R. pt. 1308). Count I of the indictment set forth this change in classification, alleging that Ketchen:

> [K]nowingly and intentionally conspired . . . to commit offenses against the United States, namely, distribution and possession with intent to distribute: (1) prior to October 21, 2011, a mixture or substance containing a detectable amount of MDPV, a controlled substance analogue . . . and (2) from October 21, 2011 until a date unknown, but no earlier than December 31, 2011, a mixture or substance containing a detectable amount of MDPV, a Schedule I controlled substance . . . .

On May 7, 2014, Ketchen pled guilty to both counts of the indictment.

On June 18, 2015, after Ketchen entered his plea but before he was sentenced, the Supreme Court issued its decision in McFadden v. United States. 135 S. Ct. 2298 (2015). In McFadden, the Court held that to support a conviction under § 841(a)(1), the government must "establish that the defendant knew he was dealing with 'a controlled substance,'" even when the controlled substance at issue was an analogue. Id. at 2302. The government could prove knowledge by showing that "the defendant knew that the substance was controlled under the CSA or the Analogue Act, even if he did

- 4 -

not know its identity" or by showing that "the defendant knew the specific features of the substance that make it a 'controlled substance analogue.'" Id. (quoting 21 U.S.C. § 802(32)(A)).

Twelve days after McFadden was decided, Ketchen moved to withdraw his guilty plea. He claimed he did not know MDPV was a controlled substance analogue before October 21, 2011 and believed he was selling a legal synthetic research chemical. According to Ketchen, if he had been informed at the Rule 11 hearing of the Analogue Act's knowledge requirement, as set forth in McFadden, he would not have pled guilty.

The court denied Ketchen's motion to withdraw his guilty plea. United States v. Ketchen, No. 1:13-CR-00133-JAW-02, 2016 WL 3676150 (D. Me. July 6, 2016). The court determined that the indictment and Rule 11 hearing adequately apprised Ketchen of the charges, including the knowledge requirement. In addition, the court found there was strong circumstantial evidence, including Ketchen's own statements, showing that he knew he was dealing with an illegal drug before October 21, 2011.

Ketchen was sentenced to 160 months in prison. On appeal, he challenges the court's denial of his motion to withdraw, as well as the court's determination at sentencing of which controlled substance is most analogous to MDPV.

A court may allow a defendant to withdraw a guilty plea after it has accepted the plea, but before it has imposed a sentence, if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). When considering a motion to withdraw a guilty plea, "a court ordinarily should begin by considering whether the plea, when entered, was voluntary, intelligent, and informed." United States v. Gates, 709 F.3d 58, 68 (1st Cir. 2013). A court may also consider "the plausibility and weight of the reason given for the withdrawal, the timing of the request, whether the defendant is now colorably asserting legal innocence, and whether the original plea was pursuant to a plea agreement." United States v. Caramadre, 807 F.3d 359, 366 (1st Cir. 2015) (quoting United States v. Aker, 181 F.3d 167, 170 (1st Cir. 1999)). The denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014).

Ketchen contends his guilty plea was not knowing and voluntary because the court failed to apprise him of the level of knowledge necessary for conviction under the Analogue Act. Ketchen claims that neither the indictment nor the Rule 11 colloquy informed him that the government must prove he knew he was dealing with a controlled substance before October 21, 2011.

The requirements of Rule 11 "are intended to assure that the defendant understands the charge and the consequences of the plea." United States v. Padilla-Galarza, 351 F.3d 594, 597 (1st Cir. 2003). This includes informing the defendant of "the elements of the charges that the prosecution would have to prove at trial." United States v. Fernández-Santos, 856 F.3d 10, 16 (1st Cir. 2017) (quoting United States v. Gandia-Maysonet, 227 F.3d 1, 3 (1st Cir. 2000)).

At the same time, Rule 11 "does not require the court to explain the technical intricacies of the charges in the indictment." Id. (quoting United States v. Ramos-Mejía, 721 F.3d 12, 15 (1st Cir. 2013)). The court's explanation "need not be precise to the point of pedantry." United States v. Jones, 778 F.3d 375, 382 (1st Cir. 2015). "The manner in which the charge is explained and the method for determining the defendant's understanding of the charge will vary from case to case depending upon the complexity of the charges, the capacity of the defendant, and the attendant circumstances." United States v. Cotal-Crespo, 47 F.3d 1, 6 (1st Cir. 1995).

Ketchen himself admitted in his motion to withdraw that he advances a "very narrow" challenge to his plea. Ketchen does not deny that he participated in a conspiracy to distribute MDPV and maintained a drug-involved residence after October 21, 2011. Rather, he claims he did not realize he was dealing with a

controlled substance before October 21, 2011 and therefore cannot be guilty of violating the Analogue Act. As the district court observed, this leaves Ketchen in "an unusual position," wherein he does not deny that he is guilty "of violating those portions of Counts One and Three that allege he violated the Controlled Substances Act." Ketchen, 2016 WL 3676150, at *14.

The court, without question, sufficiently explained the portions of Counts I and III that allege Ketchen violated the CSA. Any questions that arise regarding the Analogue Act portion of the charges in light of McFadden are simply not relevant at the plea stage of Ketchen's case. After having been apprised of the necessary elements for conviction under the CSA, Ketchen submitted a knowing and voluntary plea to Counts I and III. As the court found below, "once his criminal responsibility under the Controlled Substances Act is established, how to treat his pre-October 21, 2011 activity becomes solely a sentencing issue." Ketchen, 2016 WL 3676150, at *14.[1]

We need go no further. Because we find that Ketchen's plea was knowing and voluntary, and because he raises no colorable claim of innocence as to his post-October 21, 2011 conduct, we

---

[1] Moreover, by failing to challenge the CSA portions of his guilty plea below, and by failing to develop a challenge to them in his opening brief, he has waived the issue. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 8 -

find the court did not abuse its discretion in denying the motion to withdraw his guilty plea.[2]

## III.

Ketchen also appeals the court's determination that methcathinone, a Schedule I controlled substance, was the controlled substance listed in the sentencing guidelines most analogous to MDPV. The government had requested that the court use methcathinone as the comparator for calculating Ketchen's base offense level. As he argued below, Ketchen claims that MDPV should be compared to pyrovalerone, a Schedule V drug.

Before sentencing, the government and Ketchen submitted evidence on their proposed comparators to the court. The government offered testimony of a chemist and a drug science specialist that demonstrated how MDPV and methcathinone share similar chemical structures and have similar pharmacological effects on the central nervous system. Ketchen submitted two written reports showing that MDPV and pyrovalerone share similar

---

[2] Additionally, Ketchen argues that his conviction should be vacated due to the government's alleged failure adequately to plead scienter in the indictment. This argument is unavailing. A knowing, voluntary, and unconditional guilty plea effectuates a waiver of all non-jurisdictional errors preceding the plea. See Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Cordero, 42 F.3d 697, 699 (1st Cir. 1994). Because the alleged defect in the indictment is non-jurisdictional, and because we have found that Ketchen's plea was knowing and voluntary, Ketchen has waived this argument. See United States v. Cotton, 535 U.S. 625, 630 (2002); United States v. Urbina-Robles, 817 F.3d 838, 842 (1st Cir. 2016).

chemical structures.  However, he offered no evidence as to whether MDPV and pyrovalerone have similar effects on the central nervous system.  Pointing to Ketchen's failure to offer evidence on this "critical point," the court found that MDPV is a controlled substance analogue to methcathinone and calculated Ketchen's base offense level using methcathinone as a comparator.

We review the district court's selection of a comparator for clear error.  United States v. Giggey, 867 F.3d 236, 242 (1st Cir. 2017).  We find no clear error here.  The court considered expert testimony and other technical evidence regarding the chemical and pharmacological similarities between MDPV, methcathinone, and pyrovalerone.  "The district court found the government's expert evidence more persuasive, and we have said that '[w]hen dueling experts have each rendered a coherent and facially plausible opinion, the trial court's decision to adopt one and reject the other cannot be clearly erroneous.'"  Id. at 242-43 (quoting United States v. Jordan, 813 F.3d 442, 447 (1st Cir. 2016)).

It is an open question whether an analogue comparator must be drawn from controlled substances listed in Schedule I or II, as opposed to a drug drawn from Schedule V.  Id. at 241.  Here, however, the district court "went the extra mile and thoroughly considered the Schedule V drug proposed by the defendant," so we need not probe this issue further.  Id.

- 10 -

In the alternative, Ketchen argues that the district court erred in failing to convene an evidentiary hearing before determining the proper comparator for MDPV. We review a sentencing court's refusal to convene an evidentiary hearing for abuse of discretion. See United States v. Garcia, 954 F.2d 12, 19 (1st Cir. 1992). "[E]videntiary hearings at sentencing are . . . the exception rather than the rule," and we have repeatedly recognized that "many disputes can adequately be heard and determined on a paper record." United States v. Robles-Torres, 109 F.3d 83, 85 (1st Cir. 1997). Here, the district court, after canvassing the extensive evidentiary record, determined that live testimony was unnecessary. This determination was well within its discretion.

## IV.

For the reasons discussed above, we affirm the district court's denial of the motion to withdraw the guilty plea and the resulting sentence.