# United States Court of Appeals
## For the First Circuit

No. 19-1603

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY FARMER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, Chief U.S. District Judge]

Before

Thompson, Lipez, and Kayatta,
Circuit Judges.

Jessica LaClair for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
Scott W. Murray, United States Attorney, was on brief, for
appellee.

February 16, 2021

**KAYATTA**, **Circuit Judge**. We consider another attempt to undo a guilty plea based on the Supreme Court's decisions in Rehaif v. United States, 139 S. Ct. 2191 (2019) and United States v. Davis, 139 S. Ct. 2319 (2019). Anthony Farmer pled guilty to six counts stemming from a robbery of a federal confidential informant during a guns-for-cash deal, including one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and one count of aiding and abetting the use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c). He was sentenced to 198 months' imprisonment. Relying on Rehaif, Farmer challenges the indictment on jurisdictional grounds and the plea for plain error because the government did not charge him with, and he did not plead guilty to, knowing the facts that made him a person prohibited from possessing a firearm under 18 U.S.C. § 922(g)(1). Relying on Davis, Farmer also contends he should be entitled to withdraw his plea to the section 924(c) count. In the alternative, Farmer argues he is entitled to a remand for resentencing because the prosecutor breached the plea agreement and because his sentence is procedurally and substantively unreasonable.

For the following reasons, we affirm both Farmer's conviction and the sentence imposed by the district court.

Because this appeal follows a guilty plea, we take the facts from the undisputed portions of the presentence report ("PSR") and the transcripts of key court hearings. United States v. Romero, 906 F.3d 196, 198-99 (1st Cir. 2018).

In 2014, Farmer was convicted of armed robbery and conspiracy to commit armed robbery under New Hampshire law. See N.H. Rev. Stat. Ann. § 636:1. During the course of that robbery, the victim suffered a gunshot wound to his head. Farmer was sentenced to three to six years in state prison for the armed robbery and served over three years in custody.[1]

Just three months after being released on parole, Farmer made clear that he had not been rehabilitated. On August 17, 2017, Farmer and two co-defendants, Aaron Sperow and Raymond Perez, agreed to sell three firearms to a person who, unbeknownst to them, was a confidential informant for the Bureau of Alcohol, Tobacco and Firearms. Perez arranged for the sale to occur at his house. Farmer provided the guns. After the informant gave Farmer the money for the firearms, Farmer revealed that the supposed sale was actually a robbery. He gave a gun to Sperow, who pointed it at the informant and told him "you've been beat." Farmer explained

---

[1] The maximum term of imprisonment under New Hampshire law for armed robbery with a firearm is twenty years. See N.H. Rev. Stat. Ann. §§ 636:1(III), 651:2(II-g).

they were retaliating for a theft by the informant's cousin. Farmer then struck the informant with his hands, knocking him to the ground, and continued to pummel him, only stopping when Perez's mother entered the room.

A short time later, all three defendants were arrested after being pulled over in a vehicle registered to Farmer. Farmer had $700 of the informant's previously marked "buy" money, while Perez and Sperow each had $400. Agents searched the car and found a backpack like the one Farmer had worn during the robbery that contained two firearms, ammunition, a ski mask, gloves, and approximately seventy-one grams of cocaine.

Farmer and his co-defendants were indicted on several counts. Because of his felony record, Farmer was charged with violating the federal felon-in-possession statute. As was then common, the indictment did not assert that Farmer knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year. See 18 U.S.C. § 922(g)(1). Farmer was also charged with aiding and abetting the use of a firearm during and in relation to a crime of violence, see 18 U.S.C. §§ 2, 924(c)(1)(A), and the indictment specified "robbery of a person having lawful charge, control and custody of money of the United States," see 18 U.S.C. § 2114(a), and "assault on a person assisting a federal officer or employee in the performance of official duties," see 18 U.S.C. § 111(a)(1), (b), as the predicate

crimes of violence.[2] In addition, Farmer was charged with aiding and abetting those predicate offenses, as well as with conspiracy to commit robbery of money of the United States, in violation of 18 U.S.C. §§ 371, 2114(a), and with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841.

Farmer entered into a plea agreement under which the government agreed to recommend that Farmer be sentenced at the bottom of the sentencing guidelines range. Before accepting his plea of guilty to all counts, the district court informed Farmer that a conviction for violating section 922(g) required the government to prove three elements: (1) that Farmer had been convicted of a crime punishable by imprisonment of a term exceeding one year; (2) that he knowingly possessed the firearm described in the indictment; and (3) that the firearm was connected with interstate commerce. As was common prior to Rehaif, the district court did not inform Farmer that the government would also have to prove that Farmer knew when he possessed the firearms that he had previously been convicted of a crime punishable by more than a year in prison.

Neither party objected to the PSR prepared by the United States Probation Office, which calculated Farmer's guideline

---

[2] A duplicative count also charging Farmer with aiding and abetting the "Use of a Firearm During and In Relation to a Crime of Violence," 18 U.S.C. §§ 2 and 924(c), was ultimately dismissed.

sentencing range as sixty-three to seventy-eight months, plus a consecutive, mandatory minimum seven-year sentence on the section 924(c) count. After hearing from counsel for each party, as well as Farmer himself, the district court sentenced Farmer to an upwardly-variant ten-year sentence on the section 924(c) count, and to the high end of the guidelines range on the remaining counts, to be served consecutively for a total sentence of 198 months' imprisonment.

Less than a month after the district court sentenced Farmer, the Supreme Court decided Rehaif v. United States, 139 S. Ct. 2191 (2019) and United States v. Davis, 139 S. Ct. 2319 (2019). In Rehaif, the Court held that "in a prosecution under 18 U.S.C. § 922(g) . . . the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. As relevant here, Rehaif's holding means that had Farmer gone to trial on the section 922(g)(1) count, the government would have needed to prove beyond a reasonable doubt that he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year when he possessed the gun. See id. at 2198. We have previously referred to this knowledge requirement as the "scienter-of-status" element of a section 922(g) offense. See United States v. Burghardt, 939 F.3d 397, 400 (1st Cir. 2019).

In _Davis_, the Court invalidated the residual clause of 18 U.S.C. § 924(c). 139 S. Ct. at 2324. Consequently, had Farmer gone to trial on the section 924(c) count, the government would have needed to show that the predicate crimes of violence "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

## II.

We turn now to the merits of the challenges Farmer raises in this appeal, starting with his _Rehaif_-based challenge to his conviction under 18 U.S.C. § 922(g)(1).

## A.

Farmer advances two arguments based on _Rehaif_. First, he contends that because his indictment made no mention of his scienter of status, the district court never acquired jurisdiction over the section 922(g)(1) charge against him, and jurisdictional defects are not waived by a plea. Second, he contends that the plea colloquy and the acceptance of his plea were defective due to the failure to mention the government's need to prove his scienter of status.

**1.**

Farmer's jurisdictional argument does not get out of the starting blocks.  As we observed in Burghardt, the Supreme Court has already explained that "defects in an indictment do not deprive a court of its power to adjudicate a case."  397 F.3d at 402 (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)).

Although Farmer attempts to distinguish Cotton, we have previously relied on Cotton in holding that a "failure adequately to plead scienter in the indictment" of an Analogue Act violation is a "non-jurisdictional" defect.  See United States v. Ketchen, 877 F.3d 429, 433 n.2 (1st Cir. 2017); see also United States v. Urbina-Robles, 817 F.3d 838, 842 (1st Cir. 2016) (holding indictment's omission of element of carjacking offense to be non-jurisdictional defect).  So too here, the government's failure to allege the scienter-of-status element in the indictment did not deprive the district court of jurisdiction.[3]

---

[3]  We are not alone in so ruling.  See United States v. Hobbs, 953 F.3d 853, 856 (6th Cir. 2020); United States v. Espinoza, 816 F. App'x 82, 84 (9th Cir. 2020); United States v. Moore, 954 F.3d 1322, 1336 (11th Cir. 2020); United States v. Balde, 943 F.3d 73, 90-91 (2d Cir. 2019); see also United States v. Maez, 960 F.3d 949, 956 (7th Cir. 2020) (holding "indictment defects are never jurisdictional" (citing Cotton, 535 U.S. at 631)).

**2.**

Farmer's challenge to his plea colloquy fares little better. A guilty plea does not preclude an attack on the plea's voluntariness. See United States v. Ortiz-Torres, 449 F.3d 61, 68 (1st Cir. 2006). Because Farmer did not raise this objection below, however, we review his claim for plain error. See Burghardt, 939 F.3d at 402-03; United States v. Dominguez Benitez, 542 U.S. 74, 80 (2004). Under that familiar standard, a defendant must show "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . , and which (4) seriously impugns the fairness, integrity, or public reputation of the proceeding." United States v. Correa-Osorio, 784 F.3d 11, 18 (1st Cir. 2015).

The parties agree that, in light of Rehaif, the first two prongs of plain error review have been satisfied. As to the third prong, Farmer argues the district court's failure to inform him of the scienter-of-status element constitutes structural error, warranting reversal even in the absence of actual prejudice.[4] But we have recently considered and rejected just such a claim that Rehaif error per se satisfies the third prong of plain error review. See United States v. Patrone, No. 19-1486, 2021 WL

---

[4] Although Farmer appears to direct his structural error argument to the indictment, whether it is understood as a challenge to the indictment or the plea makes no difference.

- 9 -

128473, *3 (1st Cir. Jan. 14, 2021). Accordingly, we turn to the pivotal question: Has Farmer shown that the error affected his substantial rights? In other words, has he demonstrated "a reasonable probability that [he] would not have pled guilty had he been informed in accordance with Rehaif"? United States v. Guzmán-Merced, 984 F.3d 18, 20 (1st Cir. 2020).

In assessing whether such a showing has been made in other cases, we have trained our attention in the first instance on the extent to which being advised in accordance with Rehaif would have changed the principal risk/benefit calculation inherent in the decision to plead guilty. Thus, in Burghardt we observed that Rehaif would not have favorably altered the risk/benefit calculation in favor of going to trial for a defendant who had actually been sentenced several times to more than a year in prison and who would have risked losing a three-level reduction under the guidelines (for acceptance of responsibility) by going to trial. 939 F.3d at 403-06. Hence, absent some reason to think otherwise, there was no reasonable probability that the defendant would have withdrawn his plea had he been informed in accordance with Rehaif. Id. By contrast, in Guzmán-Merced, the defendant, who had a limited education and documented learning disabilities, only received suspended sentences for his prior offenses (none of which exceeded one year), never served a single day in prison, and allegedly committed the section 922(g) violation four years after

- 10 -

his prior convictions. 984 F.3d at 20-21. Under those circumstances, we found that the defendant could have plausibly thought that requiring the government to prove the scienter-of-status element beyond a reasonable doubt would have created a decent enough shot at acquittal to outweigh the risk of a marginally longer sentence should he go to trial and lose. Id. at 21.

This type of calculus dooms Farmer. Because he actually served three years in prison on his robbery conviction, he could not have plausibly thought that Rehaif in any way increased his chances of an acquittal, and he would have risked losing an acceptance of responsibility sentencing reduction by not pleading. He has therefore failed to carry his burden of showing it is reasonably probable that he would not have pled guilty to the illegal possession charge under section 922(g)(1) had the district court told him the government was required to prove beyond a reasonable doubt the scienter-of-status element.

**B.**

We turn next to Farmer's contention that his plea was involuntary because he entered it without knowledge of the decision of the United States Supreme Court in United States v. Davis, 139 S. Ct. 2319 (2019). Had Davis been decided sooner, he claims, he would not have pled guilty to the section 924(c) count and the two predicate crimes of violence charged in support of that count --

aiding and abetting robbery of money of the United States, 18 U.S.C. §§ 2, 2114(a), and aiding and abetting assault on a person assisting an officer of the United States in the performance of official duties, 18 U.S.C. §§ 2, 111(a)(1), (b). Also, he continues, had he not pled guilty to those charges, he would have decided to try to beat the illegal possession charge under 922(g)(1) as well. Farmer not having raised this challenge below, the parties agree our review of this claim is for plain error. For the following reasons, we conclude that there was no clear error.

We begin with section 924(c)(1)(A). Under that section, any person who commits a "crime of violence" while possessing a firearm receives a term of imprisonment of at least five years. The term "crime of violence" is defined in turn as any felony offense that:

> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

The foregoing clause (A) is often referred to as the "elements" clause, while clause (B) is often called the "residual" clause. See Davis, 139 S. Ct. at 2324. In Davis, the Supreme

- 12 -

Court struck down clause (B), the residual clause, as unconstitutionally vague. Id. And it is that ruling upon which Farmer predicates his claim of reversible error in the acceptance of his plea of guilty.

The pertinent offenses to which Farmer pled guilty are the charge under section 924(c)(1)(A)(ii) for use of a firearm in committing a crime of violence, and the two counts that each served as the requisite crime of violence: a charge of using a dangerous weapon in committing a forcible assault on a person assisting an officer of the United States under 18 U.S.C. § 111(b); and a charge of forcibly robbing United States money and endangering the life of the person in charge of that money by the use of a dangerous weapon under 18 U.S.C. § 2114(a).

At the plea colloquy, the judge accurately described the elements of the charged offenses under section 111(b), section 2114(a), and section 924(c). Farmer claims no error -- much less clear error -- in those descriptions.[5] The judge then described the § 924(c) count as follows:

---

[5] In his reply, Farmer does suggest with little elaboration that the district court's explanation of the section 111(b) charge at the plea colloquy failed to make clear that the "use" of the weapon requires that the weapon be used as a weapon (as opposed to an item of exchange) during commission of the assault. To the extent Farmer intended to make this argument as a challenge to the acceptance of his plea, he waived it by not raising it at all in his opening brief. Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000). And even if he had not waived it,

- 13 -

A person commits the crime of use of a firearm during and in relation to a crime of violence as a principal [under section 924(c)(1)(A)(ii)] if, first, he commits a crime of violence for which he may be prosecuted in a court of the United States, here, the crime of robbery of money of the United States and the crime of assault on a person assisting an officer of the United States in the performance of official duties; second, he knowingly uses or carries a firearm during and in relation to such crime, and, third, he knowingly brandishes the firearm during and in relation to such crime.

Farmer points to no clear error in this description that caused him any prejudice. In particular, he does not contest that the charged assault under section 111(b) is a crime of violence under the elements clause of section 924(c), see United States v. Taylor, 848 F.3d 476, 492-93 (1st Cir. 2017), which was unaffected by Davis.[6] The law is less clear as to whether section 2114(a) describes a crime of violence under the elements clause. See id. at 491 (declining to decide the question). Yet on plain error

---

the district court explained that the government would have to show under section 111(b) that "he use[d] a deadly or dangerous weapon to commit the forcible action" that constitutes the assault. That description makes clear the weapon could not simply be used as an item of exchange.

[6] Farmer does argue that, after Davis, aiding and abetting a crime of violence is not categorically a crime of violence. But, as Farmer acknowledges, we have previously rejected that argument under the elements clause. See United States v. García-Ortiz, 904 F.3d 102, 109 (1st Cir. 2018). Thus, even after Davis, we cannot say that it was clear error for the district court to describe aiding and abetting a crime of violence as constituting a crime of violence.

- 14 -

review, that very lack of clarity precludes us from finding the district court's description of section 2114(a) as a crime of violence to be clear error.

Farmer implies that the district court should have gone on to explain to him that if the government stumbled and ended up convicting him of only lesser-included versions of each offense, those lesser included versions, according to Farmer, would not have qualified as crimes of violence in the absence of the residual clause now stricken by Davis. And if he had known that, he says, he would have taken a shot at trying the charges against him.

On plain error review, there are at least two fatal defects in this argument. First, Farmer points to no case law requiring that a judge at a plea colloquy must describe what will happen if the government can only prove a lesser-included offense which was not separately charged. Rule 11 only requires the judge to determine that the defendant understands "the nature of each charge to which the defendant is pleading" before accepting a guilty plea. Fed. R. Crim. P. 11(b)(1)(G) (emphasis added). We see no clear and obvious error in failing to describe the nature of other, lesser offenses to which the defendant is not pleading. See Correa-Osorio, 784 F.3d at 22 (rejecting a claim of error that was contradicted by caselaw and explaining that "the plain-error standard is extremely difficult to prove" (internal quotation marks and citation omitted)).

Second, even if there had been clear error, Farmer's challenge still fails because he cannot show prejudice.[7] One crime of violence suffices to satisfy section 924(c). And it is entirely implausible that Farmer could have thought he could beat the aggravated section 111(b) claim on the merits.

The charged section 111(b) assault occurred after the confidential informant gave Farmer the money for the firearms, at which point Farmer gave a gun to Sperow, who pointed it at the informant and told him "you've been beat." Farmer asserts that because he was charged as an aider and abettor of Sperow's assault, the government would have to prove not only that Sperow assaulted the informant with the intent to commit robbery, but also that Farmer had "advance knowledge" that Sperow would do so with such intent. United States v. Fernández-Jorge, 894 F.3d 36, 52 (1st Cir. 2018). But according to Farmer, the "assault with the dangerous weapon was not done with the intent to commit robbery because at that point, the taking was complete." Instead, Farmer argues, the purpose of the assault was to punish the informant's cousin. Farmer therefore contends that it would be difficult to

        7 Although, as Farmer notes, the government made no argument under the prejudice prong, we may "'affirm on any basis apparent in the record,' even if it would 'require[] ruling on arguments not reached by the district court or even presented to us on appeal.'" Williams v. United States, 858 F.3d 708, 714 (1st Cir. 2017) (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 n.11 (1st Cir. 2013)).

prove Sperow brandished the firearm with intent to rob, let alone that Farmer had "advance knowledge" of Sperow's intent to assault with intent to rob.

This defense falters before it even gets out of the gate. The robbery here was not consummated by the taking of the informant's money, but by the refusal to give him the firearms. And the defendants achieved the informant's acquiescence by Sperow's action of pointing the gun at him. It is thus beyond reasonable dispute that Sperow brandished the firearm with the intent to rob the informant. As to Farmer's "advance knowledge" of Sperow's intent to effectuate a robbery, it was Farmer himself who, after taking the informant's money, gave the gun to Sperow. The fact that Farmer then told the informant they were doing all this because they thought the informant's cousin robbed them does nothing to negate the fact that Sperow carried out the assault with a deadly weapon with the intent to rob the informant.

Given the foregoing, we find it implausible that Farmer would have risked the potential benefits of pleading guilty in order to take a shot at beating the section 111(b) count, which charged an offense that constitutes a crime of violence even post-Davis. And for that reason, he has not shown a reasonable probability he would not have pled guilty to the section 924(c) count. See United States v. Takesian, 945 F.3d 553, 566 (1st Cir. 2019) ("'A reasonable probability[] . . . is a probability

sufficient to undermine confidence in the outcome' -- i.e., it is more than a mere possibility, but less than a preponderance of the evidence." (quoting Dominguez Benitez, 542 U.S. at 83 n.9)).

Accordingly, for each of the foregoing reasons, Farmer's challenge to the acceptance of his plea based on Davis fails on plain error review.

## C.

We next consider Farmer's challenges to his sentence, beginning with his argument that the prosecutor breached the plea agreement by failing to "affirmatively" recommend a bottom-of-the-guidelines sentence. According to Farmer, that failure entitles him to a new sentencing hearing before a different judge, in which the government would fully comply with the agreement.

"A defendant who has entered into a plea agreement with the government, and himself fulfills that agreement, is entitled to the benefit of his bargain." United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000). To satisfy this obligation, the prosecutor must pay "more than lip service to, or technical compliance with, the terms of a plea agreement." United States v. Marín-Echeverri, 846 F.3d 473, 478 (1st Cir. 2017) (quoting United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014)).

In evaluating whether a prosecutor has complied with a sentencing recommendation in a plea agreement, "we examine the totality of the circumstances[] to determine whether 'the

prosecutor's overall conduct is reasonably consistent with making such a recommendation, rather than the reverse.'" United States v. Ubiles-Rosario, 867 F.3d 277, 283 (1st Cir. 2017) (quoting United States v. Gonczy, 357 F.3d 50, 54 (1st Cir. 2004)) (internal citation and alterations omitted)). Because Farmer did not object to the purported breach of the plea agreement during the sentencing hearing, our review is for plain error. See Almonte-Nuñez, 771 F.3d at 89. For the following reasons, we find no clear and obvious error.

The plea agreement required the government to recommend that Farmer be sentenced to the mandatory minimum for the section 924(c) count and to the bottom of the applicable sentencing guidelines range for all other counts. The government's sentencing memorandum fully conformed with that requirement. The problem was that neither party's sentencing memorandum convinced the court. The court began the sentencing hearing by noting that it was not only "troubled" by the low-end guidelines recommendation, but that it was actually considering an upward variance. After defense counsel argued, the court remained unassuaged. The prosecutor then began by trying to assure the court that the recommended sentence "is still a very significant sentence" and "would represent a fairly significant increase over [Farmer's] co-defendants."

The prosecutor proceeded to make clear that she "share[d] absolutely the concerns the Court ha[d] raised" and that she did not "see any point in belaboring them." She then pointed out why the court should not vary downward and concluded by saying that she "would certainly defer to the Court's discretion with regard to where in the guidelines that sentence ultimately is placed."

We see no breach of the agreement. To the contrary, we see a prosecutor who persisted in advocating as agreed even in the face of headwinds, sought to assure the court that the recommended sentence took into account the court's concerns, and concluded with an acknowledgement of the court's wide discretion, even then implying the government's continued preference for a non-variant sentence.[8] So viewed, the prosecutor's "overall conduct" strikes us as "reasonably consistent with" the plea agreement, "rather than the reverse." Ubiles-Rosario, 867 F.3d at 283 (quoting Gonczy, 357 F.3d at 54); see also United States v. Canada, 960 F.2d 263, 270 (1st Cir. 1992) (noting that a prosecutor is not obliged to present an agreed recommendation "with any particular degree of enthusiasm"). Examining the "totality of the

---

[8] Farmer faults the prosecutor for phrasing the low-end recommendation in the past tense, but the context makes clear that in doing so she was simply acknowledging the court's sentencing discretion.

- 20 -

circumstances," Ubiles-Rosario, 867 F.3d at 283, we find no clear or obvious error.

Farmer next attacks the procedural reasonableness of his sentence, arguing that by failing to group his felon-in-possession offense with his drug distribution offense, the district court miscalculated the applicable "Multiple Count Adjustment." As Farmer acknowledges, he did not raise this challenge below, so once again we review for plain error. See Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016).

"All counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. The guidelines provide four rules for determining when counts involve "substantially the same harm." See id. § 3D1.2(a)-(d). Farmer relies on the fourth rule, subsection (d), which provides that counts should be grouped

> [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

Id. § 3D1.2(d).

Farmer does not explain how the rule laid out in subsection (d) applies to this case. Rather, he points to the subsection's instruction that offenses covered by a specified list of guidelines provisions "are to be grouped," while offenses

covered by another list of provisions are "excluded from the operation" of subsection (d). Id. It is true, as Farmer notes, that guidelines sections 2D1.1 and 2K2.1, which govern the offenses at issue here, are included in the list of provisions that are "to be grouped," see id., and that the relevant application note states that "most . . . drug offenses, [and] firearm offenses . . . are to be grouped together" under subsection (d), id. § 3D1.2, cmt. n.6.

The application note goes on to explain, however, that "[c]ounts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection." Id. (noting "[t]he 'same general type' of offense is to be construed broadly"). Even construed broadly, Farmer's felon-in-possession and drug distribution offenses are not clearly "of the same general type." Although firearms are often tools of the drug trade, "it is not inevitable that firearms located in proximity to drugs are related to the drug activity." United States v. Espinosa, 539 F.3d 926, 929 (8th Cir. 2008). In Farmer's case, drugs were found in his backpack following the use of firearms in an assault and robbery arising out of an arms deal. Farmer presents no evidence that the drugs bore any relation to the firearms, other than the fact of physical proximity. Standing alone, that is insufficient to show the

offenses are obviously of the same general type.[9]  See id. at 929-30 (upholding decision not to group drug manufacture and firearm offenses under subsection (d) where firearms were found in a garage used to produce methamphetamine).

Lastly, Farmer challenges the substantive reasonableness of his sentence, arguing the three year upward variance he received and the disparity between his 198-month sentence and the 102-month sentence of his co-defendant Sperow were unwarranted.

Farmer acknowledges that part of this disparity arises from that fact that, unlike Sperow, he was charged with and pled guilty to possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841.  Nonetheless, Farmer contends, the remaining disparity between their sentences cannot be adequately explained by differences in their culpability for the instant offense, their criminal histories, or their respective mitigating factors.

As Farmer preserved this claim, we review for abuse of discretion, looking at "the totality of the circumstances," United States v. García-Mojica, 955 F.3d 187, 194 (1st Cir. 2020) (quoting United States v. Vázquez-Martínez, 812 F.3d 18, 26 (1st Cir.

_____

[9] In light of this conclusion, we need not resolve the parties' disagreement concerning the government's contention that the failure to group the offenses caused no prejudice because grouping would have resulted in a higher overall guidelines range due to a two-level adjustment for possessing a gun in relation to a drug crime.

2016)), and asking "whether the sentence is the product of 'a plausible . . . rationale and a defensible result,'" United States v. Rivera-González, 776 F.3d 45, 51 (1st Cir. 2015) (omission in original) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

On appeal, Farmer adds a new, unpreserved argument: The disparity was on account of race, with Farmer being black and Sperow white. He offers, though, no hint of any support for the claim of racial bias other than contending that we should infer implicit bias because he received an otherwise unjustified upward variance, while Sperow received a downward variance. So, from either angle, his argument requires a showing that the different sentences cannot be explained by appropriate factors in the record.[10]

Farmer fails to make such a showing. Farmer was convicted of an additional offense that Sperow did not commit -- carrying seventy-one grams of cocaine. Farmer brought the guns, gave one to Sperow, and then he alone beat the victim. Farmer took the lion's share of the proceeds. And, most significantly, Farmer and Sperow's criminal history calculations did not take

---

[10] In his reply, Farmer also frames his argument as being that the district court "unreasonably failed to consciously consider that Farmer is black." As this argument was neither made below nor in Farmer's opening brief, it is waived. See Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 31 n.10 (1st Cir. 2020).

into account that Farmer's prior crime involved robbery, guns, and a shooting, while Sperow's involved non-violent drug offenses and a drunk driving offense. Across the board, Farmer presented a more violently recidivist record than did Sperow.

Repeated episodes of violent conduct are a key factor judges consider in weighing the appropriate length of a sentence to deter criminal conduct and protect the public, see 18 U.S.C. § 3553(a)(2)(B), (C), and Farmer's history of violent conduct is precisely what the sentencing judge pointed to in distinguishing Farmer's sentence from Sperow's.

In a last bid to show the sentencing disparity was unwarranted, Farmer argues that the district court minimized his mitigating factors, which he claims were weightier than Sperow's. The record shows, however, that the district court considered the mitigating factors and, as a result, gave Farmer a lower sentence than the one it had initially intended to give. Furthermore, the court explained that it felt his mitigating factors did not support a lower sentence when weighed against his criminal record and violent actions in this case, given the court's paramount concern with protecting the public.

In sum, Farmer asks us to compare apples to oranges. Importantly, the district court thoroughly explained its reasons for sentencing Farmer as it did and welcomed argument and evidence to the contrary. We cannot say that the disparity between Farmer

and Sperow's sentences is inconsistent with the district court's consideration of appropriate factors.

Finally, leaving no stone unturned, Farmer takes issue with the district court's failure to complete a form for the Sentencing Commission entitled "Statement of Reasons" (SOR) explaining the upward variance it imposed. See 18 U.S.C. § 3553(c)(2). Though Farmer contends this failure interfered with Congress's goal of data collection, he has failed to point to any way in which he was harmed by the absence of an SOR. An SOR "serves a largely administrative purpose," Vázquez-Martínez, 812 F.3d at 25, and a "district court's failure to docket, or even complete, an SOR 'does not require vacation of the sentence absent a showing of prejudice,'" United States v. Morales-Negrón, 974 F.3d 63, 68 (1st Cir. 2020) (quoting United States v. Fields, 858 F.3d 24, 31 (1st Cir. 2017)). Given the district court's thorough oral explanation for the sentence and variance and the absence of any harm to Farmer, we find the district court's failure to issue an SOR to the Sentencing Commission does not entitle Farmer to a new sentencing. See Vázquez-Martínez, 812 F.3d at 25-26.

## III.

For the foregoing reasons, we affirm Farmer's conviction and sentence.