# United States Court of Appeals
## For the First Circuit

No. 24-1262

UNITED STATES OF AMERICA,

Appellee,

v.

STEVE LEON WAITHE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Montecalvo, Lipez, and Aframe,
Circuit Judges.

Jane F. Peachy, Assistant Federal Public Defender, for appellant.

Karen L. Eisenstadt, Assistant United States Attorney, with whom Leah B. Foley, United States Attorney, was on brief, for appellee.

August 12, 2025

**AFRAME, Circuit Judge**.  Former college track and field coach Steve Waithe pleaded guilty to a multi-count indictment charging schemes to obtain nude and semi-nude photographs from over a hundred women, including many Waithe knew personally. Waithe's guideline sentencing range was twenty-seven to thirty-three months of imprisonment.  The district court imposed an upwardly variant sentence of sixty months.  Waithe challenges the procedural and substantive reasonableness of the sentence.  We affirm.

## I.

We describe the relevant facts based on undisputed information from the change of plea hearing, presentence report, and sentencing hearing.  United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023).

Waithe is a former All-American college track star who graduated from Pennsylvania State University in 2016.  He worked as a track and field coach at several colleges after graduating, including Northeastern University, where he coached from October 2018 through February 2019.

While employed at Northeastern, Waithe frequently asked female student-athletes on the track and field team to let him use their cell phones for the stated purpose of "film[ing] their form" at practices and meets.  Once he possessed a team member's phone, Waithe would search the device for revealing photographs, then

covertly send the pictures to himself using the "direct message" feature on the student's Instagram application. To conceal the transfer of these photographs, Waithe deleted the messages from the sent folder on the student's Instagram account before returning the phone.

About a year after Waithe left Northeastern, he registered various Instagram accounts under anonymous handles, including "privacyprotector." Waithe used these accounts to contact several of the Northeastern athletes from whom he had stolen nude and semi-nude photographs. Using Instagram's direct message feature, Waithe falsely informed these women that he had found revealing photographs of them online and offered to help scrub such images from the internet. To further this scheme, Waithe sent the women exemplar pictures of themselves that he supposedly came across on the internet but that, in fact, were photographs he had previously stolen directly from their devices. Waithe then tried to convince his victims to send him additional revealing photographs so that he could conduct a "reverse image search," which he claimed would allow him to remove the images from the internet. In total, Waithe sent over one hundred direct messages to the female athletes he coached in connection with this scheme.

Over time, Waithe developed a second scheme for obtaining revealing photographs. In March 2020, he created two

fictious online female personas. Waithe used these personas to email women living in multiple states regarding a phony "body development study" for athletes. He offered the women gift cards in exchange for information concerning their height, weight, body fat, and diet habits. He also requested that they send him nude or semi-nude photographs so that the "study" could track their "progress" and assured the women that their photographs would not be saved or shared. Waithe obtained over four hundred revealing photographs from more than thirty women using this scheme.

In addition to tricking women into sharing their intimate photographs, Waithe conspired with others he met online to hack into the Snapchat accounts of various young women, many of whom he knew personally. In May 2020, Waithe posted a message on a website for "leaked" photographs, i.e., pictures posted to the internet without the subject's consent, seeking information about how to hack into a Snapchat account. In October 2020, Waithe began communicating online with a person who could assist him in this endeavor. Waithe sent this person information about fifteen young women, including the victims' Snapchat usernames and telephone numbers.

Using this information, Waithe's co-conspirator successfully hacked into a Snapchat account belonging to one of the female athletes Waithe had coached. After learning about the successful hack, Waithe exclaimed: "Hell yeah man keep it

coming[.]   I'll pay you gladly."   Waithe later paid his co-conspirator using Google Pay.  He also conspired with several others he met online to hack into more Snapchat accounts, through which he obtained images from dozens of additional victims.

After hacking into one former Northeastern student-athlete's Snapchat account, Waithe began harassing the woman and her boyfriend from his anonymized "privacyprotector" account.  Waithe sent them several intimate photographs, some of which he obtained from the student-athlete's hacked Snapchat account and others he had stolen from her phone when he was her coach.  Waithe told the student-athlete and her boyfriend that they could help him prevent the images from being posted on the internet.  The messages that Waithe sent included one to the boyfriend that read:  "I want to make you aware that someone hacked your girlfriend's Snapchat account and will leak it soon.  I need your help to assure [sic] this doesn't happen."

Ultimately, Waithe distributed over the internet some of the images he obtained from his victims.  On one website, Waithe wrote: "Does anyone want to trade nudes?  I'm talking girls you actually know, it could be ex's [sic] or whatever.  I have quite a few, and I'm down to trade over Snapchat or something."  In another post, Waithe indicated that his collection was "crazy" and said that some of the photographs were "progress pictures" from when he used to work as a trainer.  In total, Waithe obtained

- 5 -

intimate images from fifty-one women and tried to obtain such images from at least seventy-two others.

Based on the above-described conduct, a grand jury indicted Waithe on fifteen counts. The first twelve charged Waithe with wire fraud, 18 U.S.C. § 1343, based on his scheme to obtain nude or semi-nude pictures from women by offering to help them remove their "leaked" photographs from the internet and to participate in the fake "body" study. Count Thirteen charged Waithe with cyberstalking, 18 U.S.C. § 2261A(2)(B), for his harassment of the former student-athlete from Northeastern and her boyfriend. Lastly, Counts Fourteen and Fifteen charged Waithe with conspiracy to commit computer fraud and aiding and abetting computer fraud, 18 U.S.C. §§ 371 and 1030(a)(2), (4), for the Snapchat hacking scheme.

Over the government's objection, a magistrate judge ordered Waithe released pending trial subject to certain conditions, including that he not use internet-capable devices. Waithe violated this condition by logging into his Instagram account at least 135 times to again request revealing images from female Instagram users. In one direct message, Waithe offered to pay a woman to send photographs of herself that he could use to make drawings for his "portfolio." Specifically, Waithe said that he "need[ed] a bunch of pictures . . . preferably with [the woman's] tattoos showing because it makes for much more detail in

the drawings," adding: "It wouldn't be posted anywhere or anything." In another exchange, Waithe offered a different woman $50 to participate in a "study" that would require providing him with her "most confident sensual picture." Based on these breaches of his release conditions, the magistrate judge ordered Waithe detained pending trial.

Waithe eventually pleaded guilty to all counts without a plea agreement. Waithe had no prior criminal history and was thus assigned a criminal history category of I under the sentencing guidelines. To determine the offense level, Waithe's convictions were divided into two groups: one for cyberstalking and the other for wire and computer fraud. See U.S.S.G. § 3D1.1 (setting forth the procedure for determining the offense level when a defendant has been convicted of more than one count). The cyberstalking group produced the highest offense level and thus drove the overall offense level. See id. §§ 3D1.1(a)(3), 3D1.4. Cyberstalking carries a base offense level of eighteen. Id. § 2A6.2(a). Waithe received a two-point upward adjustment for engaging in a pattern of conduct harassing the same victim, id. § 2A6.2(b)(1)(E), and another two-point upward adjustment for abusing a position of trust, id. § 3B1.3. Thus, his total offense level for the cyberstalking group was twenty-two.

For the wire and computer fraud group, the base offense level was seven. Id. § 2B1.1. Waithe received three two-point

increases because (1) his offenses involved ten or more victims, id. § 2B1.1(b)(2)(A); (2) he was convicted of an offense under 18 U.S.C. § 1030 that involved obtaining and disseminating personal information, U.S.S.G. § 2B1.1(b)(18); and (3) he abused a position of trust, id. § 3B1.3. Waithe also received a three-point increase for committing the offense using sophisticated means. Id. § 2B1.1(b)(10)(C). Based on these adjustments, Waithe's total offense for the wire and computer fraud group was sixteen.

Because the wire and computer fraud group's total offense level scored between five and eight levels below the cyberstalking group, an additional level was added to the cyberstalking group score, thus increasing Waithe's total offense level to twenty-three. See id. § 3D1.4 (setting forth the procedure for determining the combined offense level). Waithe then received a two-point reduction for accepting responsibility, id. § 3E1.1; a two-point reduction for having no prior criminal history points, id. § 4C1.1(a), (b); and a one-point reduction for timely notifying the government of his intent to plead guilty, id. § 3E1.1(b). These adjustments resulted in a total offense level of eighteen and combined with Waithe's criminal history category of I, yielded an advisory guideline sentencing range of twenty-seven to thirty-three months of imprisonment. The district court rejected the government's request for an additional two-point adjustment for being a leader in the criminal activity, see id.

§ 3B1.1, and thus used the twenty-seven to thirty-three-month range as the starting point for its sentencing determination. Waithe requested a sentence at the bottom of the guideline range of twenty-seven months, and the government advocated for an upwardly variant sentence of eighty-four months.

At the sentencing hearing, seven victims provided impact statements. The victims spoke to the enduring fear and profound loss of trust they experienced from Waithe's exploitation:

- "I not only lost a best friend, but I also lost the privilege of being able to trust friends or people in general. . . . I am scared about my online accounts. The horrifying truth is that digital is the future, and now I feel like I cannot be a part of that, and I'm being left behind."

- "It has been nothing short of a nightmare since [Waithe] walked into my life. The day he stepped foot on campus my life was changed forever. I will forever live in fear of the trail that follows me because of his actions . . . . Such personal and intimate pieces of myself have been disbursed among strangers and perverted individuals. I have to wonder where these pieces of me have gone and how they could potentially hurt me in the future."

- "[Waithe's] actions tainted my college athletic experience. I struggle trusting authority figures -- coaches, coworkers, bosses. I struggle to accept that I'll never know the true dissemination of my compromised privacy."

- "I have to remind myself that [Waithe's] actions are those of a man who preys on vulnerable young women and betrays their trust. This experience has left me with a

lingering sense of doubt, not only in others but myself. . . . I'll never fully regain the person I was before Steve Waithe came into my life."

● "It deeply saddens me that the sport that I loved has been tainted by this experience. . . . I remember the fear and disgust and the sinking feeling in my stomach the first time we were told that we would never know where he has the photos of us."

● "The pain and emotional damage . . . is immeasurable. It has haunted me through every phase of my life . . . I feel constantly violated, used, and fearful, always awaiting his next move."

The government's argument for an eighty-four-month sentence echoed these themes. The prosecutor emphasized that, as the coach of these young women, Waithe "was supposed to support, inspire, and lead," but instead he employed "methodical deception and exploitation" to "[steal] their most personal and private photos for his own sexual gratification and to distribute [those photographs] on the Internet." In support of its requested sentence, the government stressed the number of victims, the intimate nature of the crimes, Waithe's persistence in seeking images even after his arrest, and that he had traded the stolen images over the internet.

Waithe argued for a bottom-of-the-guideline sentence by contending that the aggravating factors cited by the government were already accounted for by the guidelines. Waithe also identified purportedly comparable cases in which courts had

imposed sentences below the government's request. He contended that his conduct on release could be addressed through a long supervised-release term and strict conditions. And he added that accepting the government's request would require the court to "step outside of the guidelines entirely" and "basically ignore" certain of the section 3553(a) sentencing factors. See 18 U.S.C. § 3553(a) (enumerating factors to be considered in imposing a sentence).

The district court ultimately decided against imposing the government's requested sentence. It reasoned that the guidelines "are an important anchor," and the government's request was "just too high a jump." The court instead settled on a sixty-month sentence, which represented a roughly six-level increase to the guideline range.

To support the upward variance, the district court focused on the nature and seriousness of the offense. In this regard, the court emphasized that Waithe had obtained compromising images from fifty-one victims, which the court described as a "dramatic increase" from the baseline number of ten victims that warrants application of the two-level victim enhancement under the guidelines. See U.S.S.G. § 2B1.1(b)(2)(A) (providing that the offense level should be increased by two points if the offense "involved [ten] or more victims"). The court also stressed that those affected by Waithe's crimes "weren't just victims who lost

- 11 -

some money" but rather "people who lost their privacy[,] their sense of sense of safety," and who had suffered "a destruction of trust."  Finally, the court expressed concern that Waithe engaged in similar conduct "soon after getting out" on pretrial release.[1]

After the court announced the sentence, Waithe objected by stating that "the sentence is unreasonable," and "the variance is not warranted, especially to that degree in this particular case."  Waithe timely appealed.

## II.

Waithe challenges his sentence as procedurally and substantively unreasonable.  Following our typical practice, we consider first the procedural reasonableness claims.  United States v. Colón-De Jesús, 85 F.4th 15, 20 (1st Cir. 2023).

## A.

Procedural sentencing errors include "selecting a sentence based on clearly erroneous facts" and "failing to consider" the section 3553(a) sentencing factors.  Gall v. United States, 552 U.S. 38, 51 (2007).  Waithe argues that his sentencing

---

[1]  The government also contends that the district court relied on Waithe's lack of remorse as a factor supporting an upward variance.  We do not read the record to support that contention.  While the court stated that it "didn't like" a letter that Waithe had sent the court because it did not convey personal responsibility for the harm he had caused his victims, the court also stated that Waithe's allocution at the sentencing hearing "came a lot closer to doing that."  These comments do not suggest that the court increased the sentence it otherwise would have imposed because of an alleged lack of remorse.

- 12 -

was infected by one procedural error from each of these categories. Specifically, he claims that the district court: (1) relied on clearly erroneous facts by treating his violation of pretrial release conditions as proof that he committed an additional crime while on release and (2) failed to consider section 3553(a)(6)'s mandate to avoid unwarranted sentencing disparities.

When the arguments are preserved, we analyze claims of procedural error for an abuse of discretion. United States v. Vargas-Martinez, 15 F.4th 91, 98 (1st Cir. 2021). Waithe contends that this is the correct standard here because he objected to the sentence after the district court pronounced it. The government counters that Waithe's post-sentencing objection was inadequate to preserve the procedural claims because it was not sufficiently specific and accordingly argues that plain error review should apply. We do not need to resolve this dispute because, even giving Waithe the benefit of the doubt and applying the abuse-of-discretion standard, we conclude that he is not entitled to resentencing based on his procedural error claims.

Waithe argues that the district court committed a procedural error by increasing his sentence based on a belief that he committed a new crime while on pretrial release. While Waithe concedes that he violated his release terms by using the internet to solicit additional images from women and that this conduct was relevant to the sentencing determination, he contends that the

court made an error by treating his violations as if they constituted an additional crime and that this error infected the sentencing outcome. In support of this argument, Waithe cites the court's sentencing-hearing statements that he "did it again when he was released" and "did it so soon after getting out." Waithe also highlights the court's written statement of reasons, which indicated that his "repeating the crime while on pretrial release" was one of the bases for its variance decision.

Neither party characterized Waithe's release misconduct as criminal activity in their sentencing memoranda or at the sentencing hearing. And the district court also did not explicitly describe it that way in its oral sentencing explanation. Thus, Waithe's argument asks us to construe the court's hearing statements that he "did it again" and "did it so soon after getting out" as tantamount to statements that he committed "the crime" again based on the written statement of reasons filed after the hearing. We have been reluctant, however, to find a sentencing error based on the contents of a written statement of reasons because the written statement "serves a largely administrative purpose." United States v. Vázquez–Martínez, 812 F.3d 18, 25 (1st Cir. 2016); cf. United States v. Morales-Negrón, 974 F.3d 63, 68 (1st Cir. 2020) (rejecting procedural challenge based on alleged error in written statement of reasons where the defendant "receive[d] an adequate in-court explanation for the sentence").

- 14 -

In any event, Waithe's argument fails for a more fundamental reason: the sentencing record demonstrates that the district court primarily relied on Waithe's release misconduct because of what it suggested about his risk of recidivism, not because it necessarily constituted a separate crime. Waithe himself admitted that his release misconduct was "disturbing." And the court agreed, observing that the release misconduct suggested that Waithe suffered from "obsessiveness" and failed to appreciate the gravity of his conduct and its impact on his victims.

It was these concerns -- that Waithe, while facing federal charges and the threat of incarceration, would engage in behavior like the offense conduct -- that caused the district court to identify potential recidivism as a basis for an upward variance. Such concerns would exist to a similar degree even if Waithe's efforts to obtain compromising images from women while on release failed to satisfy all the elements of a particular offense. Based on the "full context" of the district court's sentencing explanation, it is apparent that the court viewed Waithe's release misconduct as an aggravating factor regardless of whether the conduct met the definition of a separate crime. See United States v. Carmona-Alomar, 109 F.4th 60, 71 (1st Cir. 2024) (stating that a reviewing court must "consider the statement by the [d]istrict

[c]ourt that is at issue in its full context and not in isolation").

For his second procedural error claim, Waithe faults the district court for failing to adequately account for 18 U.S.C. § 3553(a)(6), which requires a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Waithe contends that the court failed to meaningfully distinguish a series of cases in which courts sentenced defendants to fewer than sixty months of imprisonment for obtaining compromising images through the internet. According to the Waithe, the court categorically rejected the proposed comparator cases based solely on the number of victims impacted by his crimes. Waithe argues that this reasoning was unsound because many of the comparator cases he identified involved a greater number of victims than those involved here.

This argument fails because it does not address the district court's full explanation for discounting the proposed comparator cases. It is true that the court indicated that Waithe's case involved a much "broader" set of victims than the cited cases and that, in terms of raw numbers, some of Waithe's proposed comparator cases involved more victims. See, e.g., United States v. Majercyzk, No. 1:16-cr-00550 (N.D. Ill. filed Jan. 18, 2017) (defendant sentenced to nine months of incarceration

for sophisticated hacking scheme that permitted him to hack into the email accounts of over three hundred victims); United States v. Moore, No. 2:13-cr-917 (C.D. Cal. filed Dec. 20, 2013) (defendant sentenced to thirty months of incarceration for his role in running a website that disseminated nude photographs from the hacked accounts of hundreds of victims).  But the court continued its reasoning in its very next sentence, adding that Waithe's victims lost more than "some money": "These were people who lost their privacy and their sense of safety, and really a destruction of trust."

The district court thus discounted Waithe's proposed comparator cases based not just on the number of victims involved but also the types of victims.  Many of Waithe's victims were not strangers to him; rather, they were women over whom Waithe had occupied a position of power.  As their coach, Waithe used that power to steal their intimate images for his own gratification and, later, used those stolen photographs as leverage to obtain additional compromising images.  The court justifiably viewed the nature of the victim-defendant relationship as an aggravating factor that distinguished this case from those cited by Waithe, most of which involved anonymous computer-hacking scenarios.

In short, when reading the district court's entire explanation, it is evident that the court considered the need to avoid unwarranted sentencing disparities under section 3553(a)(6).

The court simply evaluated that factor differently than Waithe would have hoped. Such a disagreement is no basis for relief. See United States v. Reyes-Rivera, 812 F.3d 79, 90 (1st Cir. 2016) (rejecting similar claim because the "district court plainly considered [the] section 3553(a)(6) argument, and . . . gave an adequate explanation for why [the defendant's] case was not in the same camp as those he offered" (quotation marks and citation omitted)); United States v. Garcia-Ortiz, 792 F.3d 184, 192 (1st Cir. 2015) (similar).

**B.**

We complete our analysis by addressing Waithe's challenge to the substantive reasonableness of his sentence. Waithe preserved this claim. We therefore review for an abuse of discretion. United States v. Soto-Soto, 855 F.3d 445, 450 (1st Cir. 2017).

Because selecting a sentence requires a nuanced judgment, there is no single correct sentence in any case but rather "a universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2023). We will consider a sentence to fall within that universe so long as the district court provides a "plausible sentencing rationale and a defensible result." United States v. Flores-Nater, 62 F.4th 652, 655 (1st Cir. 2023) (quoting United States v. Díaz-Lugo, 963 F.3d

- 18 -

145, 157 (1st Cir. 2020)). Waithe contends that the district court provided neither.

We begin with the district court's explanation for the sixty-month sentence, which constituted a twenty-seven-month upward variance.[2] "Where, as here, the district court imposes an upwardly variant sentence, it must explain its reasons for doing so." Id. The court's burden of explanation "increases in proportion to the extent of [its] deviation from the guideline range." United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016). Thus, a greater variance requires a commensurately more compelling justification. Flores-Nater, 62 F.4th at 656. That said, we do not require a court to "follow any particular format in explaining an upwardly variant sentence." Id. at 656. And, in some cases, a review of the record may help illuminate the court's rationale. Montero-Montero, 817 F.3d at 38. Thus, "[i]t is enough if the explanation can be gleaned 'by fair inference' from the sentencing record." Flores-Nater, 62 F.4th at 656 (quoting United States v. Ortiz-Pérez, 30 F.4th 107, 114 (1st Cir. 2022)).

As Waithe correctly points out, the district court's rationale for its upward variance focused primarily on the

---

[2] An inadequate-explanation claim may be presented as either a procedural or substantive error but need only be examined once in reviewing the sustainability of a sentence. See United States v. García Pérez, 9 F.4th 48, 52 n.1 (1st Cir. 2021).

inadequacy of the guideline range for the conduct underlying the wire and computer fraud charges.[3]  Specifically, the court zeroed in on the "nature and seriousness" of Waithe's fraud conduct.  The court noted that Waithe's scheme succeeded against fifty-one women and that he had attempted the crime against seventy-two others -- a "dramatic increase" from the ten-victim baseline for an upward adjustment under section 2B1.1(b)(2)(A)(i).

A "district court may rely on factors already considered in constructing the guideline sentencing range as long as it explains how the guidelines do not 'sufficiently account[] for the idiosyncrasies of a particular case.'"  United States v. Leach, 89 F.4th 189, 197 (1st Cir. 2023) (alteration in original) (quoting Díaz-Lugo, 963 F.3d at 156).  The court's conclusion that the number of victims here far exceeded the threshold number to trigger an enhancement provides a reasonable basis for sentencing above the guideline range.

Waithe counters that it is common in online fraud cases for there to be many victims and thus the victim count does not remove this case "from the mine-run of cases under [the]

_____

[3]  Waithe says that means we should judge the reasonableness of the variance by using the guideline range for the fraud group (twenty-one to twenty-seven months) rather than the higher range applicable to the cyberstalking group, which established the range the court treated as applicable.  Even assuming that is the correct mode of analysis, using the lower starting point would not change our conclusion.

guideline[s]."  But even accepting that general observation, Waithe's argument fails when we read the district court's sentencing rationale in a "practical, common-sense manner." Díaz-Lugo, 963 F.3d at 156.

The district court's full explanation demonstrates that it was concerned not only with the number of victims but also with who they were and how Waithe defrauded them.  As already mentioned, the court noted that these victims endured violations of "their privacy and [] sense of safety" when Waithe leveraged his power over them to obtain their intimate pictures.  The court's explanation emphasized the substance of the victim impact statements, which supported the court's belief that Waithe's conduct constituted a "very serious offense."  Waithe's offense conduct featured multiple aggravating factors -- namely, his close relationship with many of his victims, his exploitation of those relationships over many months to obtain sexually revealing images of those women, and his swapping of some of those images over the internet -- for which there is no corresponding enhancement in the guideline regime for fraud offenses.  See Leach, 89 F.4th at 199 (stating that it is permissible for the district court to consider "the real-world context" of an offense in imposing an upward variance).

In addition, the district court permissibly referenced Waithe's misconduct on pretrial release, which demonstrated a

worrisome "obsessiveness." Such conduct suggested the need for additional specific deterrence and public protection, which are section 3553(a) factors that may call for an above-guideline sentence. See 18 U.S.C. § 3553(a)(2)(B), (C).

To be sure, the district court did not provide a long explanation for imposing the variant sentence. But there is no requirement that it do so. See United State v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014) ("[A] sentencing court's obligation to explain a variance requires the court to offer a plausible and coherent rationale -- but it does not require the court to be precise to the point of pedantry."). The record indicates that the court sentenced Waithe above the guideline range because of (1) the seriousness of his offenses, as demonstrated by the number of victims, his relationship to those victims, and the lasting fear and violations of trust those victims suffered because of his crimes, and (2) Waithe's release misconduct, which heightened recidivism concerns and thus created the need for additional specific deterrence and public protection. The court concisely explained the need for the upwardly variant sentence based on these section 3553(a) considerations, which were not adequately captured by the guideline range. No more is required.

We also hold that the district court's bottom-line conclusion was reasonable. As the court explained, Waithe's crimes were not about money; they were about an exploitation of

- 22 -

trust -- something that cannot be restored through restitution. The victims provided powerful statements about their lasting trauma from Waithe's conduct, with some victims expressing a fear that they may never recover. The court reasonably relied on these statements to find that Waithe had engaged in "very serious" crimes and posed a recidivist threat. These considerations place a sixty-month sentence within the universe of reasonable outcomes.

## III.

For the reasons stated, Waithe's sentence is **<u>affirmed</u>**.